(Slip Opinion) OCTOBER TERM, 2008 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RIVERA *v.* ILLINOIS

### CERTIORARI TO THE SUPREME COURT OF ILLINOIS

No. 07–9995.   Argued February 23, 2009—Decided March 31, 2009

During jury selection in petitioner Rivera's state-court first-degree murder trial, his counsel sought to use a peremptory challenge to excuse venire member Deloris Gomez. Rivera had already exercised two peremptory challenges against women, one of whom was African-American. It is conceded that there was no basis to challenge Gomez for cause. She met the requirements for jury service, and Rivera does not contend that she was biased against him. The trial court rejected the peremptory challenge out of concern that it was discriminatory. Under *Batson* v. *Kentucky*, 476 U. S. 79, and later decisions applying *Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors based on race, ethnicity, or sex. At trial, the jury, with Gomez as its foreperson, found Rivera guilty of first-degree murder. The Illinois Supreme Court subsequently affirmed the conviction, holding that the peremptory challenge should have been allowed, but rejecting Rivera's argument that the improper seating of Gomez was a reversible error. Observing that the Constitution does not mandate peremptory challenges and that they are not necessary for a fair trial, the court held that the denial of Rivera's peremptory challenge was not a structural error requiring automatic reversal. Nor, the court found, was the error harmless beyond a reasonable doubt. The court added that it did not need to decide whether the trial court's denial was "an error of constitutional dimension" in the circumstances of Rivera's case, a comment that appears to be related to Rivera's arguments that, even absent a freestanding constitutional entitlement to peremptory challenges, the inclusion of Gomez on his jury violated the Fourteenth Amendment's Due Process Clause.

*Held:* Provided that all jurors seated in a criminal case are qualified and unbiased, the Due Process Clause does not require automatic re-

versal of a conviction because of the trial court's good-faith error in denying the defendant's peremptory challenge to a juror. Pp. 6–12.

(a) Rivera maintains that due process requires reversal whenever a criminal defendant's peremptory challenge is erroneously denied. He asserts that a trial court that fails to dismiss a lawfully challenged juror commits structural error because the jury becomes an illegally constituted tribunal, whose verdict is *per se* invalid; that this is true even if the Constitution does not mandate peremptory challenges, since criminal defendants have a constitutionally protected liberty interest in their state-provided peremptory challenge rights; that the issue is not amenable to harmless-error analysis, as it is impossible to ascertain how a properly constituted jury would have decided his case; and that automatic reversal therefore must be the rule as a matter of federal law. Rivera's arguments do not withstand scrutiny. If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern. Rather, it is a matter for the State to address under its own laws. There is no freestanding constitutional right to peremptory challenges. See, *e.g.*, *United States* v. *Martinez-Salazar*, 528 U. S. 304, 311. They are "a creature of statute," *Ross* v. *Oklahoma*, 487 U. S. 81, 89, which a State may decline to offer at all, *Georgia* v. *McCollum*, 505 U. S. 42, 57. Thus, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution. See, *e.g., Engle* v. *Isaac*, 456 U. S. 107, 121, n. 21. The Due Process Clause safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial." *Spencer* v. *Texas*, 385 U. S. 554, 563–564. Pp. 6–8.

(b) The trial judge's refusal to excuse Gomez did not deprive Rivera of his constitutional right to a fair trial before an impartial jury. *Ross* is instructive. There, a criminal defendant used a peremptory challenge to rectify an Oklahoma trial court's erroneous denial of a for-cause challenge, leaving him with one fewer peremptory challenge to use at his discretion. Even though the trial court's error might "have resulted in a jury panel different from that which would otherwise have decided [Ross's] case," 487 U. S., at 87, because no member of the jury as finally composed was removable for cause, there was no violation of his Sixth Amendment right to an impartial jury or his Fourteenth Amendment right to due process, *id.*, at 86–91. This Court reached the same conclusion with regard to a federal-court trial in *Martinez-Salazar,* 528 U. S., at 316. Rivera's efforts to distinguish *Ross* and *Martinez-Salazar* are unavailing. First, although in contrast to Rivera, the *Ross* and *Martinez-Salazar* defendants did

not challenge any of the jurors who were in fact seated, neither Go-
mez nor any other member of Rivera's jury was removable for cause.
Thus, like the *Ross* and *Martinez-Salazar* juries, Rivera's jury was
impartial for Sixth Amendment purposes. Rivera suggests that due
process concerns persist because Gomez knew he did not want her on
the panel, but this Court rejects the notion that a juror is constitu-
tionally disqualified whenever she is aware of a challenge. Second, it
is not constitutionally significant that, in contrast to *Ross* and *Marti-
nez-Salazar,* the seating of Gomez over Rivera's peremptory chal-
lenge was at odds with state law. Errors of state law do not auto-
matically become violations of due process. As in *Ross* and *Martinez-
Salazar*, there is no suggestion here that the trial judge repeatedly or
deliberately misapplied the law or acted in an arbitrary or irrational
manner. Rather, his conduct reflected a good-faith effort to enforce
*Batson*'s antidiscrimination requirements. To hold that a one-time,
good-faith misapplication of *Batson* violates due process would likely
discourage trial courts and prosecutors from policing a defendant's
discriminatory use of peremptory challenges. The Fourteenth
Amendment does not compel such a tradeoff. Pp. 8–10.

  (c) Rivera errs in insisting that, even without a constitutional vio-
lation, the deprivation of a state-provided peremptory challenge re-
quires reversal as a matter of federal law. He relies on a suggestion
in *Swain* v. *Alabama*, 380 U. S. 202, 219, that "[t]he denial or im-
pairment of the right [to exercise peremptory challenges] is reversible
error without a showing of prejudice." This statement was disavowed
in *Martinez-Salazar*, see 528 U. S., at 317, n. 4. Typically, an error is
designated as "structural," therefore "requir[ing] automatic reversal,"
only when "the error 'necessarily render[s] a criminal trial fundamen-
tally unfair or an unreliable vehicle for determining guilt or inno-
cence.' " *Washington* v. *Recuenco*, 548 U. S. 212, 218–219. The mis-
taken denial of a state-provided peremptory challenge does not, in
the circumstances here, constitute such an error. The automatic re-
versal precedents Rivera cites are inapposite. One set of cases in-
volves *constitutional* errors concerning the qualification of the jury or
judge. See, *e.g., Batson*, 476 U. S., at 86, 87. A second set of cases
involves circumstances in which federal judges or tribunals lacked
statutory authority to adjudicate the controversy, resulting in a
judgment invalid as a matter of federal law. See*, e.g.*, *Nguyen* v.
*United States*, 539 U. S. 69. Nothing in those decisions suggests that
federal law renders state-court judgments void whenever there is a
state-law defect in a tribunal's composition. Absent a federal consti-
tutional violation, States are free to decide, as a matter of state law,
that a trial court's mistaken denial of a peremptory challenge is re-
versible error *per se* or, as the Illinois Supreme Court implicitly held

Syllabus

here, that the improper seating of a competent and unbiased juror could rank as a harmless error under state law.  Pp. 10–12.

227 Ill. 2d 1, 879 N. E. 2d 876, affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

―――――――
No. 07–9995
―――――――

## MICHAEL RIVERA, PETITIONER *v.* ILLINOIS

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF ILLINOIS

[March 31, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the consequences of a state trial court's erroneous denial of a defendant's peremptory challenge to the seating of a juror in a criminal case. If all seated jurors are qualified and unbiased, does the Due Process Clause of the Fourteenth Amendment nonetheless require automatic reversal of the defendant's conviction?

Following a jury trial in an Illinois state court, defendant-petitioner Michael Rivera was convicted of first-degree murder and sentenced to a prison term of 85 years. On appeal, Rivera challenged the trial court's rejection of his peremptory challenge to venire member Deloris Gomez. Gomez sat on Rivera's jury and indeed served as the jury's foreperson. It is conceded that there was no basis to challenge Gomez for cause. She met the requirements for jury service, and Rivera does not contend that she was in fact biased against him. The Supreme Court of Illinois held that the peremptory challenge should have been allowed, but further held that the error was harmless and therefore did not warrant reversal of Rivera's conviction. We affirm the judgment of the Illinois Supreme Court.

The right to exercise peremptory challenges in state

court is determined by state law. This Court has "long recognized" that "peremptory challenges are not of federal constitutional dimension." *United States* v. *Martinez-Salazar*, 528 U. S. 304, 311 (2000). States may withhold peremptory challenges "altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." *Georgia* v. *McCollum*, 505 U. S. 42, 57 (1992). Just as state law controls the existence and exercise of peremptory challenges, so state law determines the consequences of an erroneous denial of such a challenge. Accordingly, we have no cause to disturb the Illinois Supreme Court's determination that, in the circumstances Rivera's case presents, the trial court's error did not warrant reversal of his conviction.

I

Rivera was charged with first-degree murder in the Circuit Court of Cook County, Illinois. The State alleged that Rivera, who is Hispanic, shot and killed Marcus Lee, a 16-year-old African-American, after mistaking Lee for a member of a rival gang.

During jury selection, Rivera's counsel questioned prospective juror Deloris Gomez, a business office supervisor at Cook County Hospital's outpatient orthopedic clinic. App. 32–33. Gomez stated that she sometimes interacted with patients during the check-in process and acknowledged that Cook County Hospital treats many gunshot victims. She maintained, however, that her work experience would not affect her ability to be impartial. After questioning Gomez, Rivera's counsel sought to use a peremptory challenge to excuse her. *Id.*, at 33. At that point in the jury's selection, Rivera had already used three peremptory challenges. Two of the three were exercised against women; one of the two women thus eliminated was African-American. Illinois law affords each side seven peremptory challenges. See Ill. Sup. Ct. Rule 434(d) (West

2006).

Rather than dismissing Gomez, the trial judge called counsel to chambers, where he expressed concern that the defense was discriminating against Gomez. App. 34–36. Under *Batson* v. *Kentucky*, 476 U. S. 79 (1986), and later decisions building upon *Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex. Without specifying the type of discrimination he suspected or the reasons for his concern, the judge directed Rivera's counsel to state his reasons for excusing Gomez. Counsel responded, first, that Gomez saw victims of violent crime on a daily basis. Counsel next added that he was "pulled in two different ways" because Gomez had "some kind of Hispanic connection given her name." App. 34. At that point, the judge interjected that Gomez "appears to be an African American"—the second "African American female" the defense had struck. *Id.*, at 34–35. Dissatisfied with counsel's proffered reasons, the judge denied the challenge to Gomez, but agreed to allow counsel to question Gomez further.

After asking Gomez additional questions about her work at the hospital, Rivera's counsel renewed his challenge. Counsel observed, outside the jury's presence, that most of the jurors already seated were women. Counsel said he hoped to "get some impact from possibly other men in the case." *Id.,* at 39. The court reaffirmed its earlier ruling, and Gomez was seated on the jury.

Rivera's case proceeded to trial. The jury, with Gomez as its foreperson, found Rivera guilty of first-degree murder. A divided panel of the Appellate Court of Illinois rejected Rivera's challenge to the trial judge's *Batson* ruling and affirmed his conviction. 348 Ill. App. 3d 168, 810 N. E. 2d 129 (2004).

The Supreme Court of Illinois accepted Rivera's petition for leave to appeal and remanded for further proceedings.

221 Ill. 2d 481, 852 N. E. 2d 771 (2006).  A trial judge, the
court held, may raise a *Batson* issue *sua sponte* only when
there is a prima facie case of discrimination.  Concluding
that the record was insufficient to evaluate the existence
of a prima facie case, the court instructed the trial judge to
articulate the bases for his *Batson* ruling and, in particu-
lar, to clarify whether the alleged discrimination was on
the basis of race, sex, or both.  221 Ill. 2d, at 515–516, 852
N. E. 2d, at 791.

On remand, the trial judge stated that prima facie
evidence of sex discrimination—namely, counsel's two
prior challenges to women and "the nature of [counsel's]
questions"—had prompted him to raise the *Batson* issue.
App. 136.  Counsel's stated reasons for challenging Gomez,
the judge reported, convinced him that that "there had
been a purposeful discrimination against Mrs. Gomez
because of her gender." *Id.,* at 137.

The case then returned to the Illinois Supreme Court.
Although that court disagreed with the trial judge's as-
sessment, it affirmed Rivera's conviction.  227 Ill. 2d 1,
879 N. E. 2d 876 (2007).  The Illinois High Court con-
cluded "that the record fails to support a *prima facie* case
of discrimination *of any kind*." *Id.*, at 15, 879 N. E. 2d, at
884.  Accordingly, the court determined, the trial judge
erred, first in demanding an explanation from Rivera's
counsel, and next, in denying Rivera's peremptory chal-
lenge of Gomez. *Ibid.*

Even so, the Illinois Supreme Court rejected Rivera's
ultimate argument that the improper seating of Gomez
ranked as "reversible error without a showing of preju-
dice." *Id.*, at 16, 879 N. E. 2d, at 885 (quoting *Swain* v.
*Alabama*, 380 U. S. 202, 219 (1965)).  Citing this Court's
guiding decisions, the Illinois court observed that "the
Constitution does not confer a right to peremptory chal-
lenges." 227 Ill. 2d, at 17, 879 N. E. 2d, at 885 (quoting
*Batson*, 476 U. S., at 91).  Although "peremptory chal-

lenges are '*one* means of assuring the selection of a qualified and unbiased jury,'" the court explained, they are not "indispensable to a fair trial." 227 Ill. 2d, at 16, 879 N. E. 2d, at 885 (quoting *Batson*, 476 U. S., at 91).

Accordingly, the court held, the denial of Rivera's peremptory challenge did not qualify as a structural error requiring automatic reversal. See 227 Ill. 2d, at 19–20, 879 N. E. 2d, at 887 (citing *Washington* v. *Recuenco*, 548 U. S. 212, 218–219 (2006)). The court saw no indication that Rivera had been "tried before a biased jury, or even *one* biased juror." 227 Ill. 2d, at 20, 879 N. E. 2d, at 887. In that regard, the court stressed, Rivera did "not suggest that Gomez was subject to excusal for cause." *Ibid.*

Relying on both federal and state precedents, the court proceeded to consider whether it was "clear beyond a reasonable doubt that a rational jury would have found [Rivera] guilty absent the error." *Id.,* at 21, 879 N. E. 2d, at 887 (quoting *Neder* v. *United States*, 527 U. S. 1, 18 (1999)). After reviewing the trial record, the court concluded that Gomez's presence on the jury did not prejudice Rivera because "any rational trier of fact would have found [Rivera] guilty of murder on the evidence adduced at trial." 227 Ill. 2d, at 26, 879 N. E. 2d, at 890.

Having held the error harmless beyond a reasonable doubt, the court added that it "need not decide whether the erroneous denial of a peremptory challenge is an error of constitutional dimension in these circumstances." *Id.*, at 27, 879 N. E. 2d, at 891. This comment, it appears, related to Rivera's arguments that, even absent a freestanding constitutional entitlement to peremptory challenges, the inclusion of Gomez on his jury violated his Fourteenth Amendment right to due process of law.

We granted certiorari, 554 U. S. __ (2008), to resolve an apparent conflict among state high courts over whether the erroneous denial of a peremptory challenge requires automatic reversal of a defendant's conviction as a matter

of federal law.  Compare *Angus* v. *State*, 695 N. W. 2d 109,
118 (Minn. 2005) (applying automatic reversal rule); *State*
v. *Vreen*, 143 Wash. 2d 923, 927–932, 26 P. 3d 236, 238–
240 (2001) (same), with *People* v. *Bell*, 473 Mich. 275, 292–
299, 702 N. W. 2d 128, 138–141 (2005) (rejecting auto-
matic reversal rule and looking to state law to determine
the consequences of an erroneous denial of a peremptory
challenge); 227 Ill. 2d., at 15–27, 879 N. E. 2d, at 884–891
(case below).  We now affirm the judgment of the Supreme
Court of Illinois.

## II

The Due Process Clause of the Fourteenth Amendment,
Rivera maintains, requires reversal whenever a criminal
defendant's peremptory challenge is erroneously denied.
Rivera recalls the ancient lineage of the peremptory chal-
lenge and observes that the challenge has long been
lauded as a means to guard against latent bias and to
secure "the constitutional end of an impartial jury and a
fair trial." *McCollum*, 505 U. S., at 57.  When a trial court
fails to dismiss a lawfully challenged juror, Rivera asserts,
it commits structural error: the jury becomes an illegally
constituted tribunal, and any verdict it renders is *per se*
invalid.  According to Rivera, this holds true even if the
Constitution does not itself mandate peremptory chal-
lenges, because criminal defendants have a constitution-
ally protected liberty interest in their state-provided per-
emptory challenge rights.  Cf. *Evitts* v. *Lucey*, 469 U. S.
387, 393 (1985) (although "the Constitution does not re-
quire States to grant appeals as of right to criminal defen-
dants," States that provide such appeals "must comport
with the demands of the Due Process and Equal Protection
Clauses").

The improper seating of a juror, Rivera insists, is not
amenable to harmless-error analysis because it is impossi-
ble to ascertain how a properly constituted jury—here, one

without juror Gomez—would have decided his case. Thus, he urges, whatever the constitutional status of peremptory challenges, automatic reversal must be the rule as a matter of federal law.

Rivera's arguments do not withstand scrutiny. If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern. Rather, it is a matter for the State to address under its own laws.

As Rivera acknowledges, Brief for Petitioner 38, this Court has consistently held that there is no freestanding constitutional right to peremptory challenges. See, *e.g.*, *Martinez-Salazar*, 528 U. S., at 311. We have characterized peremptory challenges as "a creature of statute," *Ross* v. *Oklahoma*, 487 U. S. 81, 89 (1988), and have made clear that a State may decline to offer them at all. *McCollum*, 505 U. S., at 57. See also *Holland* v. *Illinois*, 493 U. S. 474, 482 (1990) (dismissing the notion "that the requirement of an 'impartial jury' impliedly *compels* peremptory challenges"). When States provide peremptory challenges (as all do in some form), they confer a benefit "beyond the minimum requirements of fair [jury] selection," *Frazier* v. *United States*, 335 U. S. 497, 506 (1948), and thus retain discretion to design and implement their own systems, *Ross*, 487 U. S., at 89.[1]

Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution. "[A] mere error of state law," we have noted, "is not a denial of due process."

---

[1] See Dept. of Justice, Bureau of Justice Statistics, State Court Organization 2004, pp. 228–232 (2006) (Table 41), http://www.ojp.usdoj. gov/bjs/pub/pdf/sco04.pdf (as visited Mar. 27, 2009, and available in Clerk of Court's case file) (detailing peremptory challenge rules by State).

*Engle* v. *Isaac*, 456 U. S. 107, 121, n. 21 (1982) (internal quotation marks omitted). See also *Estelle* v. *McGuire*, 502 U. S. 62, 67, 72–73 (1991). The Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but "the fundamental elements of fairness in a criminal trial." *Spencer* v. *Texas*, 385 U. S. 554, 563–564 (1967).

The trial judge's refusal to excuse juror Gomez did not deprive Rivera of his constitutional right to a fair trial before an impartial jury. Our decision in *Ross* is instructive. Ross, a criminal defendant in Oklahoma, used a peremptory challenge to rectify the trial court's erroneous denial of a for-cause challenge, leaving him with one fewer peremptory challenge to use at his discretion. The trial court's error, we acknowledged, "may have resulted in a jury panel different from that which would otherwise have decided [Ross's] case." 487 U. S., at 87. But because no member of the jury as finally composed was removable for cause, we found no violation of Ross's Sixth Amendment right to an impartial jury or his Fourteenth Amendment right to due process. *Id.*, at 86–91.

We encountered a similar situation in *Martinez-Salazar* and reached the same conclusion. Martinez-Salazar, who was tried in federal court, was entitled to exercise peremptory challenges pursuant to Federal Rule of Criminal Procedure 24(b). His decision to use one of his peremptory challenges to cure the trial court's erroneous denial of a for-cause challenge, we held, did not impair his rights under that Rule. "[A] principal reason for peremptories," we explained, is "to help secure the constitutional guarantee of trial by an impartial jury." 528 U. S., at 316. Having "received precisely what federal law provided," and having been tried "by a jury on which no biased juror sat," Martinez-Salazar could not "tenably assert any violation of his . . . right to due process." *Id.*, at 307, 317.

Rivera's efforts to distinguish *Ross* and *Martinez-*

*Salazar* are unavailing. First, Rivera observes, the defendants in *Ross* and *Martinez-Salazar* did not challenge any of the jurors who were in fact seated. In contrast, Rivera attempted to exercise a peremptory challenge against a specific person—Gomez—whom he perceived to be unfavorable to his cause. But, as Rivera recognizes, neither Gomez nor any other member of his jury was removable for cause. See Tr. of Oral Arg. 9. Thus, like the juries in *Ross* and *Martinez-Salazar*, Rivera's jury was impartial for Sixth Amendment purposes. Rivera suggests that due process concerns persist because Gomez knew he did not want her on the panel. Gomez, however, was not privy to the *in camera* discussions concerning Rivera's attempt to exercise a peremptory strike against her. See, *supra*, at 3. We reject the notion that a juror is constitutionally disqualified whenever she is aware that a party has challenged her. Were the rule otherwise, a party could circumvent *Batson* by insisting in open court that a trial court dismiss a juror even though the party's peremptory challenge was discriminatory. Or a party could obtain a juror's dismissal simply by making in her presence a baseless for-cause challenge. Due process does not require such counterintuitive results.

Second, it is not constitutionally significant that the seating of Gomez over Rivera's peremptory challenge was at odds with state law. The defendants in *Ross* and *Martinez-Salazar*, Rivera emphasizes, were not denied their peremptory-challenge rights under applicable law—state law in *Ross* and the Federal Rules of Criminal Procedure in *Martinez-Salazar*. But as we have already explained, *supra*, at 7–8, errors of state law do not automatically become violations of due process. As in *Ross* and *Martinez-Salazar*, there is no suggestion here that the trial judge repeatedly or deliberately misapplied the law or acted in an arbitrary or irrational manner. *Martinez-Salazar*, 528 U. S., at 316; *Ross*, 487 U. S., at 91, n. 5.

Rather, the trial judge's conduct reflected a good-faith, if arguably overzealous, effort to enforce the antidiscrimination requirements of our *Batson*-related precedents. To hold that a one-time, good-faith misapplication of *Batson* violates due process would likely discourage trial courts and prosecutors from policing a criminal defendant's discriminatory use of peremptory challenges. The Fourteenth Amendment does not compel such a tradeoff.

Rivera insists that, even without a constitutional violation, the deprivation of a state-provided peremptory challenge requires reversal as a matter of federal law. We disagree. Rivera relies in part on *Swain*, 380 U. S. 202, which suggested that "[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice." *Id.*, at 219. We disavowed this statement in *Martinez-Salazar*, observing, albeit in dicta, "that the oft-quoted language in *Swain* was not only unnecessary to the decision in that case . . . but was founded on a series of our early cases decided long before the adoption of harmless-error review." 528 U. S., at 317, n. 4. As our recent decisions make clear, we typically designate an error as "structural," therefore "requir[ing] automatic reversal," only when "the error 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Recuenco*, 548 U. S., at 218–219 (quoting *Neder*, 527 U. S., at 9). The mistaken denial of a state-provided peremptory challenge does not, at least in the circumstances we confront here, constitute an error of that character.

The automatic reversal precedents Rivera cites are inapposite. One set of cases involves *constitutional* errors concerning the qualification of the jury or judge. In *Batson*, for example, we held that the unlawful exclusion of jurors based on race requires reversal because it "violates a defendant's right to equal protection," "unconstitutionally discriminate[s] against the excluded juror," and "un-

dermine[s] public confidence in the fairness of our system of justice." 476 U. S., at 86, 87. Similarly, dismissal of a juror in violation of *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968),[2] we have held, is constitutional error that requires vacation of a death sentence. See *Gray* v. *Mississippi*, 481 U. S. 648 (1987). See also *Gomez* v. *United States*, 490 U. S. 858, 876 (1989) ("Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury." (internal quotation marks omitted)).

A second set of cases involves circumstances in which federal judges or tribunals lacked statutory authority to adjudicate the controversy. We have held the resulting judgment in such cases invalid as a matter of federal law. See*, e.g.*, *Nguyen* v. *United States*, 539 U. S. 69 (2003); *Wingo* v. *Wedding*, 418 U. S. 461 (1974). Nothing in these decisions suggests that federal law renders state-court judgments void whenever there is a state-law defect in a tribunal's composition. Absent a federal constitutional violation, States retain the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal. States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*. Or they may conclude, as the Supreme Court of Illinois implicitly did here, that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law.

In sum, Rivera received precisely what due process required: a fair trial before an impartial and properly

—————

[2] Under *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968), "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Id.,* at 522.

instructed jury, which found him guilty of every element of the charged offense.

*      *      *

For the reasons stated, the judgment of the Supreme Court of Illinois is

*Affirmed.*