# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-587


**STATE OF LOUISIANA**

**VERSUS**

**EARNEST G. HAMILTON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 20957
HONORABLE DESIREE DYESS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John E. Conery, and D. Kent Savoie, Judges.


**AFFIRMED.**

**BillyJoe Harrington**
**District Attorney**
**State of Louisiana**
**Parish of Natchitoches**
**10th Judicial District Court**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2806**
**Monroe, LA 71207-2806**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Earnest G. Hamilton**

**SAVOIE, Judge.**

Defendant Earnest Hamilton was indicted on December 19, 2013, for aggravated rape, a violation of La.R.S. 14:42. On October 13, 2015, Defendant filed a "Motion to Have Attorney Jason Methvene [sic] Fired." A hearing was held on October 16, 2015, following which the trial court denied the motion in open court. Trial commenced on January 25, 2016, and on January 26, 2016, the jury found Defendant guilty as charged. Defendant was sentenced on February 25, 2016, to life imprisonment without the benefit of parole, probation, or suspension of sentence.

Defendant has perfected a timely appeal, wherein he alleges two assignments of error: 1) The trial court erred in not conducting a sufficient inquiry into the allegations regarding a clear conflict which existed between Defendant and defense counsel and then replacing him; and 2) The trial court erred in failing to grant challenges for cause made by Defendant.

For the following reasons, the Defendant's assignments of error are without merit. Defendant's conviction and sentence are affirmed.

## FACTS

Defendant, whose date of birth is October 29, 1977, had sexual intercourse between the dates of July 1, 2013, and July 5, 2013, with B.H, whose date of birth is January 10, 2002.[1] The victim became pregnant and delivered a baby boy on March 20, 2014. At trial, B.H. testified that her uncle, Defendant, had sexual intercourse with her when she was eleven years of age. DNA samples were taken from Defendant, the victim, and the child, and they were submitted for analysis.

---

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

The results showed that Defendant could not be excluded as the biological father. The paternity index "indicated that Earnest Hamilton was 418 billion times more likely to be the father" of the child than "another randomly selected male."

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After a review of the record, we find no errors patent.

## ASSIGNMENT OF ERROR NUMBER ONE

In brief, Defendant asserts that the trial court failed to make a sufficient inquiry into his assertion that defense counsel should have been removed from his case. Defendant filed a pro se motion requesting the trial court have defense counsel, Mr. Methvin, replaced. In his motion to fire defense counsel, he alleged that when defense counsel came to see him in jail, defense counsel told him that his trial date was October 19, 2015; that he would be found guilty of aggravated rape; "[a]nd that the Assistant District Attorney Billy Jo Harrington [h]ad [t]old Mr. Melvine [sic] not to do [a]nything to help the Plaintiff[.]" Defendant asserted that defense counsel did no investigation of the case and filed none of the motions Defendant wanted him to file.

At the hearing, the following conversation ensued between the trial court and Defendant:

> THE COURT: Mr. Hamilton, you filed a motion to have Attorney Jason Methvin fired?
>
> MR. HAMILTON: Yes ma'am.
>
> THE COURT: On what basis sir?

MR. HAMILTON: I mean, ya'll [sic] should see this here. I mean he ain't, after two years, almost two years it [sic] coming straight to my trial.

THE COURT: Okay I don't really, I don't understand what you just said, how that effects [sic] this at all.

MR. HAMILTON: How it don't [sic] effect [sic] it?"

THE COURT: Well has Mr. Methvin given you all the discovery that's [sic] been given to him?

MR. HAMILTON: Yeah, what a week before we go to trial?

THE COURT: Well, when did he receive it? Do you have anything to defend it?

MR. HAMILTON: Ya'll [sic]do what ya'll [sic] want to do man.

THE COURT: No, Mr. Hamilton, come back here. Mr. Hamilton, come back here.

MR. HAMILTON: You can't make me talk to you.

THE COURT: You filed the motion sir.

MR. HAMILTON: Are you [sic] grant it or you not? I'm not going to no trial with no f_ _ king Jason Methvin.

THE COURT: Uh, he is held in contempt. Ten days in lock down. You're not gonna [sic] cuss in my courtroom.

MR. HAMILTON: Suck my d_ _k b_ _ _h.

This concluded the hearing on the motion. The trial court denied the motion.

Defendant abandoned any further presentation of evidence on his motion by stating, "Ya'll [sic] do what ya'll [sic] want to do man." He was uncooperative, disrespectful and eventually had to be escorted out of the courtroom. Furthermore, Defendant did not meet his burden of proof. He did not enter any evidence into the record to support his claim. In his pro se motion, Defendant did not state what further investigation defense counsel should have conducted or what defense counsel would have found had he investigated further. Nor did Defendant indicate

3

what motions defense counsel should have filed. In brief to this court, there was no discussion as to what further investigation was necessary or what motions Mr. Methvin should have filed.

In brief, Defendant raises the concern of ineffective assistance of counsel. He states:

> In this case, it is clear Earnest and his appointed counsel had a communication problem. Once the attorney-client relationship has been damaged to the extent the client does not trust the attorney, it would be difficult for an attorney to provide effective assistance of counsel. In this case, it is clear Earnest was not going to be able to communicate with Trial Counsel based on his trepidations about the nature of the relationship and level of interest on the part of counsel. Thus, he should have been provided counsel with whom he could effectively communicate in order to ensure his constitutional right to effective counsel.

In *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701, this court stated:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter,* 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

Defendant filed his motion with the trial court, it was heard and ruled upon, and he then appealed this issue before this court. Therefore, the claim for ineffective assistance of counsel is properly considered on appeal. The record shows that Defendant provided no evidence at the trial court due entirely to Defendant's actions in the courtroom. The trial court did not err in denying Defendant's motion. This assignment is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the trial court erred when it denied cause challenges for six jurors following *voir dire*, forcing Defendant to use all twelve peremptory challenges.

In *State v. Lewis,* 12-1021, pp. 9-11 (La. 3/19/13), 112 So.3d 796, 801-02 (footnote omitted), the supreme court stated:

> The peremptory challenge occupies an important role in the jury selection process. By enabling each side to exclude those jurors it perceives as harboring subtle biases with regard to the case which were not elicited on voir dire or which do not establish legal cause for a challenge, peremptory challenges are a means of " 'eliminat[ing] extremes of partiality on both sides,'. . .thereby 'assuring the selection of a qualified and unbiased jury.' " *Holland v. Illinois*, 493 U.S. 474, 484, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), *quoting Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and *Batson v. Kentucky,* 476 U.S. 79, 91, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). While peremptory challenges are one means of assuring the selection of a qualified and unbiased jury, the U.S. Supreme Court has determined that an erroneous ruling denying a peremptory challenge is not, as a matter of federal constitutional law, a structural error requiring automatic reversal of a defendant's conviction. *Rivera v. Illinois*, 556 U.S. 148, 160-61, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). Rather, state law determines the consequences when a peremptory challenge is erroneously denied. *Id*. at 161-62, 129 S.Ct. 1446. As the Court explained in *Rivera*, "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern . . . [but] a matter for the State to address under its own laws." *Id.*

> In Louisiana, the peremptory challenge is protected by and preserved in the constitution. La. Const. art. I, § 17 ("The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law"). While the exercise of a peremptory challenge is provided through legislation, La.C.Cr.P. arts. 795, 799, and 799.1, it is not merely a statutory right. Thus, this court has long recognized that when a defendant is forced to utilize a peremptory challenge to correct a district court's error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected. *State v. Monroe*, 366 So.2d 1345,

5

1347 (La.1978). In such instances, prejudice is presumed. *Id*.; *State v. Juniors,* 2003-2425, p. 8 (La.6/29/05), 915 So.2d 291, 305.

Louisiana jurisprudence holds that trial courts have wide discretion in determining whether to reject a juror for cause, and those determinations cannot be disturbed absent an abuse of discretion. *State v. Jones*, 474 So.2d 919 (La.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906 (1986). A review of the record indicates that Defendant used all twelve of his peremptory challenges prior to the full complement of the jury. La.Code Crim.P. art. 799.1.

In a third circuit case with a defendant of the same last name, *State v. Hamilton,* 12-204, pp. 4-5 (La.App. 3 Cir. 11/20/13), 127 So.3d 76, 79-80, *writ denied,* 13-2925 (La. 5/30/14), 140 So.3d 1173, this court discussed issues of a trial court's denial of challenges for cause, as follows:

> A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the trial judge abused its discretion. . . .
>
> "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate "(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." In the instant case, it is undisputed that defense counsel exhausted his peremptory challenges, and, therefore, need only show that the trial court abused its discretion by denying a challenge for cause.

*State v. Odenbaugh,* 10-268, pp. 23-25 (La.12/6/11), 82 So.3d 215, 236-37, *cert. denied,* — U.S. — , 133 S.Ct. 410, 184 L.Ed.2d 51 (2012) (citations omitted).

According to La.Code Crim.P. art. 797, the State or Defendant may challenge a prospective juror for cause on the ground that:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

> (4) The juror will not accept the law as given to him by the court.

In *Odenbaugh*, 82 So.3d at 238 (citations omitted), the supreme court further stated:

> [W]hile cognizant of the broad discretion afforded a district court when ruling on cause challenges, this Court has cautioned that a prospective juror's responses cannot be considered in isolation and that a challenge should be granted, "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably [inferred]."

In the current case, Defendant argues that the trial court erred when it denied cause challenges for prospective jurors Calab Chesser, Van Wiggins, Kathy Kohls, Lykeisha Marshall, Angela Perot, and Katie Carter.

***Calab Chesser*:**

While the State accepted Mr. Chesser, defense counsel challenged him for cause, stating:

Uh, not only did he struggle with the presumption of innocence and production, uh, he was one of the ones that also testified about how he . . .scratch that. Okay. P[sic] expects for the defendant even after the prosecution, finishes his case to produce and/or testify one way or the other. And I believe that one point, Your Honor, he even stated that it would be. . .I believe, my fault, and that I did not prove that my client was innocent. Uh, so, I think that he's having a problem with the presumption of innocence and production, as well as the defendant's right not to self. . .to not incriminate himself. So, I challenge him for cause.

In brief, Defendant points to a conversation between Mr. Chesser and defense counsel, as follows:

MR. METHVIN: Okay. And you believe that. . .do you believe that innocent people can be indicted by a grand jury?

. . . .

MR. METHVIN: Okay. Mr. Chesser?

MR. CHESSER: Yes Sir. I don't believe it carries any weight. Uh, the reason I'm here is to hear both of y'alls [sic] side and go off of that. . .what happened. . .what I hear about other people, it doesn't have anything to do with (inaudible).

. . . .

MR. METHVIN: Number 5. When I had asked you previously about grand jury indictment and whatnot, you said something that kind of caught my ear a little bit. And it was that you wouldn't make a decision until you heard both sides of the story. Right?

MR. CHESSER: Yes Sir.

MR. METHVIN: Could you tell me what you mean by that?

MR. CHESSER: Uh, I'm not going to go just based off of what one side says. Uh, in order to be fair, y'all each have to have time to prove facts from both sides. So I'm not going to. . .

MR. METHVIN: Okay.

MR. CHESSER: . . .I mean, right now, he's not guilty because he haven't [sic] been proven guilty.

MR. METHVIN: Okay. What if I were to tell you the law requires the State to prove the case beyond a reasonable doubt. And that a defendant does not have [to] show you anything?

MR. CHESSER: If the State can prove to me that he did it. And I have a reasonable doubt in my mind that he didn't do it, then he's not guilty. But if I. . .if he can prove that he did do it. And that I believe he did. Then (inaudible).

The conversation went on in this vain, with Mr. Chesser stating that he understood Defendant was innocent until proven guilty. He did state, in response to defense counsel's question if he would be "disappointed" if Defendant did not testify, that he would like to hear both sides, but he would not hold it against Defendant if he did not testify.

The State noted that "[h]e did not appear to me that way. . . . And when the instruction was read to him, uh, actually what the charge is gonna be to the jury, he understood that. And stated that he would abide by all of that, Your Honor." The trial court agreed, having specifically addressed Mr. Chesser, asking him, "after all the evidence, you are not convinced beyond a reasonable doubt. The State calls the defendant's guilt, could you find the defendant not guilty, even if the defendant chose not to testify as evidence?" Mr. Chesser responded, "Yes, Ma'am." The trial court thereafter stated that "when he rehabilitated as well as when he was asked the specifics, that he understood that the defendant did not have to testify, and he would not hold it against the defendant."

There was no error in the trial court's denial of defense counsel's challenge for cause. There was nothing in Mr. Chesser's answers which indicated he was biased, prejudiced, or was unable to render a judgment according to law. Mr. Chesser specifically said that Defendant was "not guilty because he haven't [sic] been proven guilty."

***Van Wiggins*:**

Defense counsel explained his reason for challenging Mr. Wiggins for cause, as follows:

> Uh, he said that he would give weight to the Grand Jury Indictment, Number 1. Number two, he stated, when I asked him about which was worse, the leading [sic] 11 go. . .11 guilty go free versus one innocent man. He indicated that it would be worse for letting the 11 guilty go free. Thereby showing at least on two grounds that he has problem [sic] with the presumption of innocence. . .uh, given to my client. Uh, and he. . .that was quite an extensive conversation that he and I had versus the brief replies that he gave to the Court when the Court offered just instructions to him.

The record indicates that Mr. Wiggins was confused about the role of the grand jury. He asked why he was there if Defendant had been found guilty by the grand jury. Mr. Wiggins did not say, as inferred in Defendant's brief, that persons indicted by a grand jury were guilty.

> Defense counsel's and Mr. Wiggins' *voir dire* discussion was thus:
>
> MR. METHVIN: Okay. Mr. Wiggins, right in front of you. What do you. . .same question to you about allowing. . .convicting 1 innocent man, and letting 11 go free. What [do] you think is worst [sic]:
>
> MR. WIGGINS: I'd be sick either way. But sending 11 free, I wouldn't. . . no way.
>
> MR. METHVIN. Okay.
>
> MR. WIGGINS: And I feel that if I was in the jury. And that one innocent. . .then, you didn't do your job to proven [sic] guilty. . .prove him innocent.
>
>     . . . .
>
> MR. METHVIN: . . . Do I have to prove my client innocent?
>
> MR. WIGGINS: Well, I believe they are innocent until proven guilty, but if 12 have already. . .them [sic] 12 say he was guilty, and then. . . I don't know, I feel like you would have to prove him to be innocent.
>
> MR. METHVIN: Okay. So, you would expect me to produce evidence. . .

MR. WIGGINS:  That he was innocent.

MR. METHVIN:  . . .at the closing [of the] states case?

MR. WIGGINS:  Yeah.

MR. METHVIN:  Okay.  And if I didn't, you'd hold that against me?  My client?

MR. WIGGINS:  If [sic] didn't do it. . .I mean, he would have to still prove his case, the State.

Following the defense counsel's questioning, the State addressed Mr. Wiggins and explained the role of the grand jury as opposed to the jury selection Mr. Wiggins was participating in at the time.

MR. HARRINGTON: . . .Uh, going back to the indictment question, now Mr. Wiggins.  If I told you that there are two types of juries in Louisiana, one is a grand jury, and that's an accusatory type (inaudible).  They decide whether or not to charge someone with a crime or not.  And then there is a patent jury, which is what y'all are here for today, which is fact finding is the time [sic] guilty or not guilty on Melissa [sic] crime.  So, two different types of bodies. And, so, does that change in town [sic] on that issue any?

MR. WIGGINS:  Uh, yeah (inaudible, away from microphone.)

MR. HARRINGTON:  Okay. So, you would not be inclined to give us grand jury indictment, if that's the only. . .what got us here?

MR. WIGGINS:  Yeah. . .yes sir.

MR. HARRINGTON: Okay. And you talked a lot about the defendant not putting on evidence or maybe putting on evidence or. . .the judge will instruct you that the defendant does not have to put on evidence, and that you can't hold that against him.  Would you follow the law?  Or that instruction by the judge?

MR. WIGGINS:  Yes sir.

Later, the trial court addressed Mr. Wiggins:

THE COURT:  And Mr. Wiggins?  I don't care what your answer is, but I just want to explore the inconsistencies, okay?

MR. WIGGINS:  Okay.

11

THE COURT: Between what was said to Mr. Methvin and what was it to Mr. Harrington. So, if the Court instructed you that. The bill of indictment is not evidence, and cannot be considered as evidence. It is simply the vehicle that the law requires to get this matter to court. Would you accept that, Sir?

MR. WIGGINS: I would.

THE COURT: Okay. And previously, you answered yes to the role of the jury is to decide what facts have been proven or not proven. The State must prove the guilt of the accused, beyond a reasonable doubt. The defendant begins the trial with a clean slate. The mere fact of a charge means nothing in terms of evidence. The defendant is presumed to be innocent, can you accept this as law and hold the State to its burden of proof and give the defendant the presumption of innocence?

MR. WIGGINS: Yes.

THE COURT: So, do you understand, sir? The inconsistencies in the answers that you are giving at this point?

MR. WIGGINS: Yes.

The trial court stated that "Mr. Wiggins was sufficiently rehabilitated. And that he was clearing [sic] his answers that he understood that the indictment was not evidence[.]" We agree with the trial court. The trial court did not err when it denied Defendant's cause challenge. Mr. Wiggins was of the impression that a grand jury indictment was a statement of guilt and was confused as to what would have been his responsibilities if he was selected to be a juror. As noted above, "[a]n opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence." La.Code Crim.P. art. 797.

*Lykeisha Marshall*:

Ms. Marshall testified during *voir dire* that she had a two-month-old child at home. During questioning by defense counsel, Ms. Marshall explained that she was concerned because she had a doctor's appointment for her infant on the following Wednesday. She also stated that she worked five days a week and that, at the time, she shared a vehicle with her mother, and the vehicle was currently out of commission. Later, the trial court asked Ms. Marshall if she could make further arrangements for transportation if she were selected as a juror and Ms. Marshall answered, "I can try."

Defense counsel based his challenge for cause on the reason that "she would be unable to concentrate fully upon deliberations given outside concerns and giving [sic] the youth of the child and the fact that she did not have what sounded like contingency plans available for her." The trial court denied the challenge, stating that "[w]hen asked Ms. . . . when the Court asked Ms. Marshall about her child, she did say that she could make arrangements." *Id.* While Ms. Marshall expressed concern about a doctor's appointment for her child the following week, nothing Ms. Marshall said indicated that she would not be able to deliberate because she would be too concerned about her child. Ms. Marshall's problem was transportation. Otherwise, Ms. Marshall did not indicate bias, prejudice, or an inability to follow the law.

### Cathy Kohls:

Defense counsel challenged Ms. Kohls for cause because:

For the same reasons, the weight and sufficiency of the evidence that she would give to the grand jury indictment. I believe that she also stated that she expected there to be two sides. I had asked her what I thought, Your Honor, was an easy question, which was, and I think she might have misunderstood it. I don't know. But I had asked her initially, if she had to vote on the guilt or innocence of him, at least right now that she would not vote. . . .she would withhold her vote.

She stated. . .uh, while she stated she wouldn't have enough information, she stated that she had expected there to be information from both sides.

The trial court denied the challenge, stating that "[t]he Court believes that she did say that she would listen to all the evidence, and so. . .and that she did not have enough information at this time to make a determination." *Id.*

In brief, Defendant states that "Ms. Kohls asked about possible punishment during voir dire. . . . She then went on to say if the State didn't prove every element of the crime she would abstain from voting. She was fairly insistent on this point, saying she would not vote not guilty."

Mr. Kohls did ask what the sentence would be if Defendant was found guilty. She was advised by the trial court that sentencing was not a concern during *voir dire*. She did not mention it again. Later, defense counsel asked of another prospective juror:

[W]ould the age of the alleged victim in this case make you want to. . .for lack of a better word for this state some slack and maybe vote guilty, even though they didn't [sic] all essential elements crime?

Defense counsel then directed Ms. Kohls' attention to the same question without restating or rephrasing the question. He asked Ms. Kohls:

MR. METHVIN: Well, what if I tell you that . . . let's just say. They didn't offer any evidence as to uh . . . to the age of the child?

MS. KOHLS: It's going to say right now. I don't have any information.

MR. METHVIN: If [sic] were to ask you to uh. . .you've heard the charge if we were to ask you would vote right now, guilty or not guilty would you say?

MS. KOHLS: I wouldn't vote. I'd abstain.

MR. METHVIN: Okay. Why would you abstain?

MS. KOHLS: I. . . I don't have any information.

MR. METHVIN: All right. Fair enough. Why wouldn't you vote not guilty? Just right now, at this instant . . . at this moment right now, we're asking you to give a verdict.

MR. Kohls: No.

MR. METHVIN: Okay.

MS. KOHLS: I . . . I wouldn't. We're here in the Courtroom being chosen as a jury for a trial. So, I think that there must've been a basis for us to appear here, and be selected. Anywhere [sic] at this point, I would think that there are some facts to be heard.

MR. METHVIN: Okay. The (inaudible) been charged by a grand jury indictment, does that mean anything to you, at least at this point, or influence your ability to hear this case?

MS. KOHLS: It sounds very serious.

THE COURT: Do you think that that grand jury indictment, carries weight that you're going to carry with you throughout the trial?

MS. KOHLS: I would be waiting to hear the facts before I make a decision.

It appears from defense counsel's questioning that he was trying to get Ms. Kohls to say that Defendant was innocent until found guilty. However, the trial court did not err when it denied the challenge. Ms. Kohls did not say that, unless the State proved its case, she would not vote. Defense counsel demanded a vote of Ms. Kohls that minute—during *voir dire*; this was what she was objecting to. There was nothing in her response to Mr. Methvin's questions to indicate that she was biased, prejudiced, or would not follow the law. Ms. Kohls's subsequent answers indicated she would listen to the evidence before she made a determination of Defendant's guilt or innocence. The trial court did not err when it denied the challenge for cause.

*Angela Perot*:

15

Defense counsel challenged Ms. Perot because "[s]he stated there toward the tail end of your questioning. It did not seem like that [sic] she was able to break down the statute to the elements necessary, and therefore would have a hard time applying that [sic] the law and judging beyond a reasonable doubt as to each of the available . . . each of the elements." The trial court disagreed, stating that "Ms. Perot has indicated that she would follow the law as instructed." *Id.*

During *voir dire*, defense counsel asked the group at large:

MR. METHVIN: How many of you . . . and if I can get a show of hands. How many of you are expecting to hear both sides of the story so to speak?

(NO RESPONSE RECORED BY EITHER OF THE JURORS)

MR. METHVIN: Kind of everybody. Okay. How many of you would be disappointed if at the close of the State's case, I come on behalf of Mr. Hamilton [sic] do not present any evidence?

MS. PEROT: Would be disappointed?

MR. METHVIN: Sure.

MS PEROT: (No response recorded).

MR. METHVIN: Okay. Anybody else? All right. Ms. Perot?

MS. PEROT: I would be disappointed.

MR. METHVIN: Okay. Do you think that the defendant has the burden of production to prove his innocence?

MS. PEROT: No.

MR. METHVIN: Okay. When you say disappointed, would you explain it?

MS. PEROT: I would just like to hear, the defendant himself. . .uh, claim his innocence, I guess, or his side of the story.

MR. METHVIN: Okay. Uh, you're familiar with the right not to incriminate yourself?

MS. PEROT: Sure.

MR. METHVIN:  Do you understand that. . .

MS. PEROT:  And I understand that if he does not put anything on the table, whatever he is charged with, the four things you stated, that's what I have to make my decision [sic] guilty or innocent.

MR. METHVIN:  Right.  If he does not produce any evidence or does not testify.  Can you vote not guilty based upon just . . .

MS. PEROT:  Yes.

MR. METHVIN:  . . . judging the prosecution's case in chief?

MS. PEROT:  Yes.

Later, the trial court questioned Ms. Perot:

THE COURT:  I don't care what your answers are.  I just want to explore some inconsistencies right now.  Just to make sure that were [sic] clear, okay?  Uh, Mr. Perot . . . you . . . if after you heard all the evidence you are not convinced beyond a reasonable doubt. The State [sic] from the defendant's guilt could you find the defendant not guilty.  Even if the defendant chose not to testify or present any evidence?

MS. PEROT:  There's a little confusion here for me. Because Mr. Methvin, and Mr. Harrington presented two different ways to find the defendant guilty.  Mr. Methvin focused on four different points and what Mr. Harrigton ran, was very concise, I guess.  So, what is your question of me that I would be able to evaluate what he is charged with?  And then what the State presents?  And then what I've been [sic] able to find him guilty or innocent?

THE COURT:  Would you accept the law as instructed by the Court?

MS. PEROT:  Yes.

THE COURT:  And if after you have heard all of the evidence, you are not convinced beyond a reasonable doubt.  The State proved the defendant's guilty [sic], could you find the defendant not guilty?

MS. PEROT:  Yes.

THE COURT:  And that even if the defendant chose not to testify are [sic] present any evidence?

MS. PEROT:  Yes.

THE COURT: And . . . can you evaluate the credibility of a child or any other witness, just as you would evaluate the credibility of any other witness (sic)? Not giving them more weight than any other witness?

MS. PEROT: Yes.

THE COURT: Thank you, Ma'am. The defendant is presumed to be innocent, can you accept this as law and hold the State to its burden of proof and give the defendant the presumption of innocence?

MS. PEROT: Yes.

Nothing was said during Ms. Perot's responses to defense counsel that indicated she would have a hard time discerning the elements of the crime and applying the law. Furthermore, Ms. Perot clearly stated that she would like to hear from Defendant, but she appeared to be rehabilitated by the trial court's instructions regarding the burden of proof and Defendant's presumption of innocence. *Id*. We find that Ms. Perot was sufficiently rehabilitated. The trial court's denial of defense counsel's cause challenge was without error.

*Katie Carter*:

Defense counsel asserted that he challenged Ms. Carter because she believed the element of the victim's age was immaterial and that she stated she would like to hear from both sides. During *voir dire*, defense counsel asked Ms. Carter a question concerning the age of the victim as an element, as follows:

MR. METHVIN: If the State does not put forth anything is to say m[sic], but they prove the other three elements of the case. As to the charge, how did you vote?

MS. CARTER: Unless they . . . they would have to prove a reasonable doubt that the three elements. Uh, age would be a factor. If they proved the elements . . . all the other elements without a reasonable doubt, I would have to say guilty.

MR. METHVIN: So, in your mind, the State would in three out of four?

18

MS. CARTER: It shouldn't. . .the State. . .I think the. . .I think the State would do a better job in all of the elements. . .all the elements before [sic] so we can make a fair decision.

MR. METHVIN: So, you and I let them . . . you would not require them to prove every element of the crime (inaudible) still vote guilty?

MS. CARTER: I think uh, they would put forth all efforts to prove all elements of the crime. Uh, age . . . age should . . . it's more . . . should be considered. But if they are proved without a reasonable doubt, the other elements, you know, we still have to vote guilty. If they prove without a reasonable doubt on all the elements, I don't think the State would not prove all four elements.

MR. METHVIN: Even though . . . even though the statute defines . . . specifically defines the crime as the one under the age of 13, and they don't prove anything as for as the child being under the age of 13.

MS. CARTER: But then again we would have to listen to all the evidence come [sic] from the chair and make a fair decision from that. So, honestly, you couldn't say whether he was guilty or not guilty, you would have to listen to all the evidence.

Mr. Methvin then asked the prospective jurors at large whether they would evaluate the testimony of a child under the age of thirteen, since age was a necessary element of the charge. Ms. Carter responded that she believed she could.

Following defense counsel's questioning, the State cited the definition of rape and reiterated the elements of aggravated rape, noting specifically that the victim, as in this case, had to be under the age of thirteen. He asked if the prospective jurors understood. Ms. Carter responded that she understood. Finally, the trial court addressed Ms. Carter specifically and asked her if she could follow the court's instructions as to the law. The trial court asked her that, if the State failed to meet its burden of proof beyond a reasonable doubt, could she find Defendant not guilty. Ms. Carter answered affirmatively to the trial court's

questions. She further stated that if Defendant chose not to testify or present evidence, she would not hold it against him.

The State disagreed with defense counsel's challenge for cause of Ms. Carter, stating that Ms. Carter "was very clear in the end, Your Honor, that she would follow the law." The trial court agreed. Ms. Carter's initial responses to defense counsel's question contained nothing that indicated she was partial, biased, or prejudiced. She acknowledged that age of the victim was a necessary element of aggravated rape in this case.

Regarding all of the six prospective jurors in the current case, even if there was seemingly prejudicial responses, in *State v. Mazique*, 09-845, p.17 (La.App. 5 Cir. 4/27/10), 40 So.3d 224, 236-37, *writ denied,* 10-1198 (La. 12/17/10), 51 So.3d 19, (footnotes omitted), the fifth circuit noted:

> A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if, after further questioning, the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied.

In *State v. Bozeman*, 03-897, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 1029, 1032, *writ denied*, 04-497 (La. 7/2/04), 877 So.2d 141, the fifth circuit cited *State v. Anthony*, 98-406 (La. 4/11/00), 776 So.2d 376, 392, as stating that "[t]he trial court has great discretion in ruling on cause challenges because 'it has the benefit of seeing the facial expressions and hearing the vocal intonation of the members of the jury venire as they respond to questioning.'"

20

In the present case, of all of the above prospective jurors' answers, none of the answers indicated definitively or with certainty or even probably that they could not accord Defendant the presumption of innocence. In *Bozeman,* 866 So.2d 1029, a prospective juror, after asking if the defendant had prior convictions or arrests, was asked by the trial court if he could apply the presumption of innocence, and he replied that he "probably could not do that." *Id.* at 1032. The fifth circuit noted:

> However, a prospective juror's declaration of fairness and neutrality does not assure an understanding of the constitutional principle of the presumption of innocence. When the prospective juror clearly asserts that he could not or probably would not apply the presumption of innocence that juror should be struck for cause unless rehabilitated. The failure of the trial judge to grant such a challenge is reversible error. In *State v. Oliphant*, 220 La. 489, 56 So.2d 846 (1952), the Louisiana Supreme Court held that when a prospective juror was not able to afford the defendant the presumption of innocence mandated in the law, the trial court erred in refusing to sustain defendant's challenge for cause as to that prospective juror. The *Oliphant* court held "no matter how strongly the juror asserts that he could render a fair verdict," where the juror was unable either to afford the defendant the presumption of innocence mandated in the law or where the prospective juror would not permit the presumption of innocence to follow the accused all during the trial, there exists a valid challenge for cause. *Oliphant* at 850.

> In considering the challenge for cause in this case the trial judge indicated that he believed that Mr. Lacoste only had a problem with the presumption of innocence if the juror knew the defendant had prior convictions. The trial judge in denying the challenge noted in the record that prior convictions "shouldn't come out." Whether or not the defendant has or does not have prior convictions does not affect his constitutional right to the presumption of innocence.

> The Supreme Court has stated "it is an important part of *voir dire* examination to discover any prospective juror who may have difficulty understanding his right (the presumption of innocence) as well as to discover a juror who may hold it against a defendant who exercises the right." *State v. Cross*, 93-1189 (La.6/30/95), 658 So.2d at 687; *State v. Lee*, 559 So.2d 1310, 1316 (La.1990); cited in *State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97) 692 So.2d 612. As stated by our Supreme Court in *State v. Hallal*, 557 So.2d 1388 (La.1990), a challenge for cause should be granted, even when a prospective juror

21

declares his ability to remain impartial when the juror's response as a whole reveals facts from which biased, prejudice, or inability to render judgment according to the law may be reasonably implied.

The Louisiana Supreme Court recently addressed challenges for cause in *State v. Kang*, 2002-2812, (La.10/21/03), 859 So.2d 649, instructing the appellate court to show deference to the trial court's conclusions in ruling on a challenge for cause. We find the instant case to be distinguishable from *Kang*. In *Kang* the trial judge rehabilitated the challenged juror and based on the rehabilitative questions and answers, concluded that the juror could be fair and impartial. In the instant case, when Mr. Lacoste was asked if he was going to be able to apply the presumption of innocence, he responded, "probably not". There was no rehabilitation by the prosecutor or the trial judge. We find that the denial of the challenge for cause as to Mr. Lacoste was reversible error, hence the defendant's conviction and sentence should be vacated and the matter remanded for a new trial.

*Id*. at 1033-34.

We find that the record supports the trial court's denial of defense counsel's challenges for cause for the prospective jurors above. Therefore, Defendant's conviction and sentence are affirmed.

## DECREE

Defendant's convictions and sentence are affirmed.

**AFFIRMED.**

22