IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74833-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID M BURCH, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 27, 2017 |

SCHINDLER, J. — A jury convicted David M. Burch of theft in the first degree and assault in the fourth degree. Burch seeks reversal, arguing the trial court erred in rejecting his peremptory challenge to strike an African American juror. Burch claims there was no prima facie showing of discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). But where, as here, the proponent of a peremptory challenge offers a race-neutral explanation and the court rules on racial motivation, a prima facie showing is moot. Burch also claims the court erred in rejecting his justifications for exercising a peremptory challenge to strike the African American juror. Because the decision to reject the justifications to excuse the peremptory challenge is not clearly erroneous, we affirm.

Voir Dire

The State charged David M. Burch, a white male, with theft in the first degree in violation of RCW 9A.56.030(1)(b) and .020(1)(a) and assault in the fourth degree in violation of RCW 9A.36.041. Burch entered a plea of not guilty.

The trial began on February 23, 2016. Before jury selection, the court addressed the procedure for challenges for cause and peremptory challenges. The court explained that at the conclusion of voir dire, the court would excuse the jury panel to allow the parties to exercise for-cause and peremptory challenges on the record. The court stated:

> I keep an eye on the jurors. . . .
>      . . . [I]f I see somebody that's clearly from a minority group, okay, and I don't see a basis for you to exercise a peremptory against them and then you do, I'm probably going to ask you about that.

The court told the attorneys that the parties would need to present "a really good reason that . . . I observed as to why that person is leaving us, and if I don't hear it, we'll keep them." Neither the State nor the defense objected to the procedure for peremptory challenges.

At the beginning of voir dire, the court asked each member of the jury panel a number of general biographical questions, including the occupation of a spouse, the juror's involvement in "any club or organization," "any hobbies or favorite recreational activities," and news sources.

Prospective "Juror 15" was an African American female. In response to the general questions, Juror 15 stated she lives in Kirkland with her spouse, her spouse is a project manager with an investment bank, she is "very active" with

2

her sorority, her spouse is a football official and they are "really into sports," and she is a "crossfit addict."[1]

> PROSPECTIVE JUROR NUMBER 15: Hi. . . . I live in Kirkland with my husband. He is a project manager with an investment bank that's based in New Jersey so he's back twice a month. In terms of non-work-related clubs, I'm very active with my sorority, Alpha Kappa Alpha Sorority, Incorporated. I'm an officer in the graduate chapter and also an officer with the foundation which is our fundraising arm. In terms of sources of news, newspaper, subscription to USA Today and Wall Street Journal, internet as well, MSN, Yahoo News, radio, mostly talk radio, sports related, big sports fan. And then in terms of hobbies, my husband and I love to travel. As I said, we're really into sports. He's a football official so I attend a lot of his games. And then I work out. I'm a crossfit addict.

The prosecutor asked Juror 15 about her involvement with the sorority and whether there were "any times where you may remember something different than one of your girlfriends did." Juror 15 responded that she joined the sorority as an undergraduate. As a member of the graduate chapter, she and the other sorority members "spend time together because we do a lot of community-related activities." Juror 15 said there were times when she remembered "old memories" differently than her friends.

Defense counsel did not individually question Juror 15. However, during voir dire, defense counsel asked the jury panel whether there are "some reasons why an innocent person might be charged with a crime." In response, Juror 15 said:

> Just assumptions that that some people make about a particular group of people or a particular class of people enters into an opinion that they form or a decision that they may make in their

---

[1] CrossFit is a fitness program that incorporates a number of different exercises, including gymnastics, weightlifting, running, and rowing.

3

minds. So I think that comes into play and could be a reason why an innocent person could actually be accused of something that they didn't do.

At the conclusion of voir dire, the court excused the jury panel to allow the parties to exercise for-cause and peremptory challenges on the record. After the prosecutor exercised three peremptory challenges and defense counsel exercised two peremptory challenges, the defense exercised a peremptory challenge to strike Juror 15. The court asked, "Why"? In response, defense counsel mentioned Juror 15's "professionalism"[2] but offered no explanation. Defense counsel identified as reasons to exercise a peremptory challenge Juror 15's involvement in the sorority and that she is "very regimented" and "very much a rule-follower and may have some trouble seeing areas of gray."

The court disagreed with the reasons defense counsel identified to strike Juror 15. The court ruled, "I have trouble with that being a basis to find any indication of — a basis to excuse her. I'm going to say no for now unless you can think of another reason to excuse her." Defense counsel offered no other reason to strike Juror 15. Juror 15 was seated as a member of the jury panel. The jury convicted Burch as charged of theft in the first degree and assault in the fourth degree.

Batson Challenge

Burch seeks reversal of the convictions. Burch contends the court erred in denying his request to exercise a peremptory challenge and strike Juror 15

---

[2] The form Juror 15 filled out listing her name, address, and occupation is not in the record.

because there was no prima facie showing of discrimination under Batson. Burch also claims the court erred in rejecting his race-neutral explanations for exercising a peremptory challenge to strike Juror 15.

In Batson, the United States Supreme Court held that the "Equal Protection Clause" of the Fourteenth Amendment to the United States Constitution prohibits the State from exercising a peremptory challenge on the basis of race. Batson, 476 U.S. at 89. "The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.' " Foster v. Chatman, ___ U.S. ___, 136 S. Ct. 1737, 1747, 195 L. Ed. 2d 1 (2016) (quoting Snyder v. Louisiana, 552 U.S. 472, 478, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008)).

The Court in Batson established a three-step process to determine whether a peremptory challenge is based on race. Batson, 476 U.S. at 93-98. First, the proponent must make a prima facie showing that the preemptory challenge is exercised on the basis of race. Batson, 476 U.S. at 93-94. If that showing has been made, the prosecutor must offer a race-neutral reason for striking the juror in question. Batson, 476 U.S. at 94. The trial court must then determine whether the defendant has shown purposeful discrimination. Batson, 476 U.S. at 98.

In Georgia v. McCollum, 505 U.S. 42, 59, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992), the Court held the Equal Protection Clause "prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." The Court states that "denying a person participation in jury service on account of his race unconstitutionally discriminates

against the excluded juror." McCollum, 505 U.S. at 48. "Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination." McCollum, 505 U.S. at 49. "Selection procedures that purposefully exclude African-Americans from juries undermine that public confidence—as well they should." McCollum, 505 U.S. at 49. " 'The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause.' " McCollum, 505 U.S. at 49 (quoting Powers v. Ohio, 499 U.S. 400, 412, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). The Court reiterated that "the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party." McCollum, 505 U.S. at 59.

Prima Facie Showing

Burch cites State v. Evans, 100 Wn. App. 757, 998 P.2d 373 (2000), and State v. Vreen, 143 Wn.2d 923, 26 P.3d 236 (2001), to argue the court erred in denying his peremptory challenge because there was no prima facie showing of purposeful discrimination. Because the record shows the question of whether there was a prima facie showing is moot, we reject his argument.

In Hernandez v. New York, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991), the Court held that if the proponent of a peremptory strike offers a race-neutral explanation and the trial court has ruled on intentional discrimination, "the preliminary issue of whether the defendant had made a prima facie showing becomes moot."

6

In State v. Hicks, 163 Wn.2d 477, 492, 181 P.3d 831 (2008), the Washington Supreme Court cites Hernandez and notes that in State v. Luvene, 127 Wn.2d 690, 699, 903 P.2d 960 (1995), our Supreme Court also concluded that if the proponent " 'has offered a race-neutral explanation and the trial court has ruled on the question of racial motivation, the preliminary prima facie case is unnecessary.' " The court in Hicks held that if the proponent has "offered a race-neutral explanation" and the trial court has ruled on whether the justification is discriminatory, the question of whether a "prima facie case was established" is moot. Hicks, 163 Wn.2d at 492-93; see also State v. Thomas, 166 Wn.2d 380, 397, 208 P.3d 1107 (2009). Where a prima facie showing is moot, the "reviewing court should focus its deferential review on the trial court's ultimate ruling on the Batson challenge." Hicks, 163 Wn.2d at 492-93.

Here, because Burch offered race-neutral reasons for exercising the peremptory challenge to strike Juror 15 and the court ruled on whether the reasons were discriminatory, the question of whether there was a prima facie showing of discrimination is moot. Hicks, 163 Wn.2d at 492-93; Luvene, 127 Wn.2d at 699; Thomas, 166 Wn.2d at 397. We also note that the Washington Supreme Court recently adopted a bright-line rule for the analysis of a prima facie showing under Batson. See City of Seattle v. Erickson, 188 Wn.2d 721, 732, 398 P.3d 1124 (2017).

The right to exercise a peremptory challenge in state court is governed by state law. Rivera v. Illinois, 556 U.S. 148, 152, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009). " '[P]eremptory challenges are not of federal constitutional

7

dimension.' " Rivera, 556 U.S. at 152 (quoting United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000)). States may withhold peremptory challenges "altogether without impairing the constitutional guarantee of an impartial jury and a fair trial." McCollum, 505 U.S. at 57.

In Erickson, the court held that the exercise of a peremptory challenge to strike a juror "who is the only member of a cognizable racial group" establishes a prima facie showing of race discrimination and the proponent must offer a race-neutral explanation. Erickson, 188 Wn.2d at 734.[3] The court then must determine based on the totality of circumstances whether the strike is racially motivated. Erickson, 188 Wn.2d at 736. The court held:

> To ensure a robust equal protection guaranty, we now limit that discretion and adopt the bright-line Rhone[4] rule. We hold that the trial court must recognize a prima facie case of discriminatory purpose when the sole member of a racially cognizable group has been struck from the jury. The trial court must then require an explanation from the striking party and analyze, based on the explanation and the totality of the circumstances, whether the strike was racially motivated.

Erickson, 188 Wn.2d at 734 (citing Batson, 476 U.S. at 94).

Race-Neutral Explanations

Burch also claims the record does not support the trial court's decision to reject his race-neutral reasons to exercise a peremptory challenge and strike

---

[3] Here, the record is clear that Juror 15 is an African American woman, but the record does not indicate the makeup of the jury venire.

[4] State v. Rhone, 168 Wn.2d 645, 229 P.3d 752 (2010) (plurality opinion).

Juror 15.[5]

"[A] trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is 'entitled to great deference' " and will not be overturned unless clearly erroneous. Davis v. Ayala, ___ U.S. ___, 135 S. Ct. 2187, 2199, 192 L. Ed. 2d 323 (2015)[6] (quoting Felkner v. Jackson, 562 U.S. 594, 598, 131 S. Ct. 1305, 179 L. Ed. 2d 374 (2011)); Hicks, 163 Wn.2d at 486. The Court in Hernandez explained the need to defer to the trial court as follows:

> [T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal . . . .
> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding "largely will turn on evaluation of credibility." 476 U.S. at 98, n.21. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, . . . demeanor and credibility lies "peculiarly within a trial judge's province." Wainwright v. Witt, 469 U.S. 412, 428[, 105 S. Ct. 844, 83 L. Ed. 2d 841] (1985).

Hernandez, 500 U.S. at 364-65. In Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003), the Court also held that "[d]eference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations."

---

[5] For the first time in his reply brief, Burch also argues article I, sections 21 and 22 of the Washington State Constitution guarantee the defendant the right to exercise a peremptory challenge. We do not consider an analysis under State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986), that is presented for the first time in a reply brief. State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994); State v. Clark, 124 Wn.2d 90, 95 n.2, 875 P.2d 613 (1994); State v. Lively, 130 Wn.2d 1, 18 n.4, 921 P.2d 1035 (1996); State v. Goodin, 67 Wn. App. 623, 628, 838 P.2d 135 (1992).

[6] Internal quotation marks omitted.

A decision is clearly erroneous only when the reviewing court "is left with a definite and firm conviction that a mistake has been committed." State v. Saintcalle, 178 Wn.2d 34, 41, 309 P.3d 326 (2013). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " Hernandez, 500 U.S. at 369 (quoting Anderson v. Bessemer, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)). We will not "substitute our judgment for that of the trier of fact." State v. Bennett, 180 Wn. App. 484, 490, 322 P.3d 815 (2014).

Here, defense counsel identified two reasons to exercise a peremptory challenge and strike Juror 15. First, involvement in her sorority and second, a "pretty strict Crossfit regimen."[7]

> Your Honor, I'm selecting number 15 because she indicated two things about herself, including her professionalism. She's a profession in a job. She is very involved with her sorority and with a pretty strict Crossfit regimen. The defense perspective on that is that she's very regimented, she's very much so a rule-follower and may have some trouble seeing areas of gray.

The court disagreed with defense counsel's characterization of the answers about her involvement in a sorority or that engaging in CrossFit showed Juror 15 was "rule driven." The court stated, "I'm very concerned about dismissing a juror of color where I don't see a bias."

> I didn't hear that, and she's African American. I mean, she — she did indicate she's involved in her sorority, but she said they're involved in community activity, which hardly indicates that she's rule driven, and she didn't say anything about being ridged [sic] about Crossfit. She just said it's an activity. It didn't — it's not a stress she gave us when she was talking about her life. I mean, I just don't see it, and I'm very concerned about dismissing a juror of color where I don't see a basis.

---

[7] As previously noted, defense counsel mentioned but did not address "professionalism."

The court asked defense counsel is there "[a]nything else going on [with Juror 15] that concerns you"? In response, defense counsel told the court, "That was just my impression of her, Your Honor, overall was that she was very rule oriented." The court disagreed with the assumption that "everybody in Crossfit is rule driven" and asked counsel to identify some other reason.

> I don't know where you get that from. Okay?
> Is there any other answer you point to? I hate to assume everybody in Crossfit is rule driven. Do you follow me? I mean, especially when the person doesn't express that in any other way.

Defense counsel identified the involvement of Juror 15 in the sorority.

> I think of it in terms of the — not in being a member of sororities, perhaps just my own impressions, but . . . being so involved — I've known people who are involved as an adult in sororities.

The court pointed out the sorority is an African American sorority that engages in community activities. The court rejected involvement in the sorority as a basis to excuse Juror 15.

> Okay. But I'm — I'm going to point out that, is [the] sorority she mentioned is an African American sorority. Okay? And she indicated that these hear [sic] vehicle for community involvement, so I'm really having trouble with this. Do you follow me?
> [DEFENSE COUNSEL]: I do. I follow you, Your Honor, in terms that in not wanting to excuse someone who's of a minority group. All I say is the impression —
> THE COURT: Particularly —
> [DEFENSE COUNSEL]: — it was the only —
> THE COURT: — when their membership —
> [DEFENSE COUNSEL]: — impression that I had.
> THE COURT: — is in another minority group that's community based, I have trouble with that being a basis to find any indication of — a basis to excuse her.

Burch does not meet his burden of showing that the trial court's decision to reject the justifications to exercise a peremptory challenge and strike an

11

African American juror was clearly erroneous or that the record compels "a contrary conclusion." Saintcalle, 178 Wn.2d at 56. Further, the " 'failure to engage in any meaningful voir dire examination on a subject the [proponent] alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.' " Miller-El v. Dretke, 545 U.S. 231, 246, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (quoting Ex parte Travis, 776 So. 2d 874, 881 (Ala. 2000)); see also Hicks, 163 Wn.2d at 491 ("Lack of questioning prior to dismissing a juror can be evidence that the removal is race-based.").

Because the trial court's decision to reject the justifications for exercising a peremptory challenge to strike Juror 15 was not clearly erroneous, we affirm.[8]

WE CONCUR:

---

[8] Burch asks us to deny appellate costs if the State claims it is entitled to costs as the substantially prevailing party. Appellate costs are generally awarded to the substantially prevailing party. RAP 14.2. However, where a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Under RAP 14.2, the State may file a motion for costs if financial circumstances have significantly improved since the finding of indigency. State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

12