Filed 9/8/25  P. v. Valenciano CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO JAVIER VALENCIANO,<br><br>    Defendant and Appellant. | H051645<br>(Santa Cruz County<br>Super. Ct. No. F17283) |

Before this court for the third time, appellant Francisco Javier Valenciano appeals from the trial court's denial at the prima facie stage of his most recent Penal Code section 1172.6 petition seeking vacatur of his murder conviction and for resentencing.[1] On appeal, Valenciano argues that the finality of the trial court's denial after an evidentiary hearing of his first petition for resentencing does not preclude relitigation of his eligibility for relief because changes in the law now require considering a defendant's youth in implied malice murder convictions and limit the admissibility of gang evidence. Finding no prejudicial error in the trial court's denial on this record, we affirm.

---

[1] Unspecified statutory references are to the Penal Code.

# I. BACKGROUND

## A. *The Offenses and Valenciano's Convictions*[2]

In 2009, a jury convicted Valenciano and codefendants Juan Lorenzo Soto and Anthony Raymon Gonzales of the 2004 first degree robbery-murder of Rodolfo Escobar and found true the allegation that the murder was for the benefit of a criminal street gang. The trial court sentenced Valenciano to a total determinate term of 34 years consecutive to an indeterminate term of 50 years to life.[3]

The evidence at trial established the following: In July 2004, Escobar was playing poker with several other men in the driveway of an apartment complex when Valenciano and codefendants Soto and Gonzales robbed the card players at gunpoint. When Escobar resisted, he was fatally shot in the head, at point-blank range.

Valenciano, Gonzales, and Soto were members of Varrio Green Valley (VGV), a Norteño street gang reputed to be among the most violent in the area. VGV, like other Norteño street gangs in the area, were under a "regimen[t]" of the Nuestra Familia prison gang, which collected "taxes" then averaging $200 per month from gang members, sometimes by force and intimidation. A Nuestra Familia enforcer, the brother of another VGV member, would later slash Valenciano's father in the head when the father could not provide bail money. Gang monies were sometimes used to support families of jailed gang members, and Valenciano had once distributed those funds.

Valenciano and Gonzales were close friends, and the week before Escobar's killing, Valenciano told Gonzales that he needed money to pay his gang tax and planned

---

[2] We granted Valenciano's request to take judicial notice of his prior appeals, *People v. Soto et al.* (June 26, 2012, H034605) [nonpub. opn.] (*Valenciano I*) and *People v. Valenciano* (Dec. 9, 2022, H049401) [nonpub. opn.] (*Valenciano II*). We derive our summary of the offense from *Valenciano I* and *Valenciano II*. A more detailed summary can be found in our prior opinions.

[3] We affirmed the judgment in Valenciano's direct appeal in *Valenciano I*.

to rob someone for that purpose. Although the men initially set out to rob a liquor store, the only parking space at the store was reserved for disabled access, so they continued driving until they happened on the group of men gambling in a driveway with cash.

According to a jailhouse informant, Valenciano admitted supplying the trio with VGV guns that he possessed. The same informant testified that Soto described Valenciano having stayed with the car during the robbery, listening to the police scanner, when Gonzales shot Escobar for disrespecting him. After the trio disposed of their car, Valenciano summoned other gang members to assist in leaving the area.

**B.      *Valenciano's 2019 Petition for Resentencing***

In 2019, Valenciano filed his first petition for resentencing under section 1172.6, arguing that the prosecution had proceeded on a theory that he was guilty of first degree murder based on a now-invalid theory of felony murder.[4] Valenciano retained counsel Aaron Spolin of Spolin Law to represent him in the resentencing proceedings. After an evidentiary hearing, the trial court held that Valenciano was a major participant who acted with reckless indifference to human life and was thus guilty of felony murder under current law.

On appeal, Spolin Law continued to represent Valenciano. This court affirmed the denial of resentencing, concluding that sufficient evidence supported the trial court's findings that Valenciano was a major participant in the underlying robbery who acted with reckless indifference to human life. For the trial court's finding that Valenciano was a major participant despite not interacting directly with the robbery victims, we observed that there was evidence that it was Valenciano who (1) planned the robbery to pay a gang

---

[4] "A person convicted of felony murder or murder under . . . [an]other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may . . . petition . . . the court that sentenced the petitioner to have the . . . conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a); *People v. Birdsall* (2022) 77 Cal.App.5th 859, 865.)

3

tax he owed to Nuestra Familia, (2) supplied the firearms, (3) drove the participants to the scene, (4) observed his codefendants' conduct from close proximity, and (5) facilitated their escape by monitoring a police scanner, disposing of it, and securing safe transport for all three participants. And for the reckless indifference finding—in addition to Valenciano's planning, provision of the firearms, and proximity to the events—we found there was evidence that Valenciano knew of his cohorts' propensity for violence (given evidence of the gang's violence, his own membership within the gang, and his friendship with Gonzales, the shooter) but took no opportunity to minimize the risk of violence when Escobar engaged Gonzales and refused to comply.

## C.  *Valenciano's 2023 Petition for Resentencing*

In May 2023, Valenciano filed another form petition for resentencing under section 1172.6, in which he did not address the disposition of his prior petition. The People moved to dismiss the petition under principles of issue preclusion and law of the case. Opposing the motion to dismiss and now represented by his present appellate counsel, Valenciano argued that the final adjudication of his 2019 petition was not preclusive, because neither the trial court nor this court had expressly considered his youth as a factor in determining whether he was a major participant who acted with reckless indifference to human life and Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill No. 333) had since limited what qualifies as evidence of predicate gang crimes. Valenciano added that his prior appellate counsel had been constitutionally ineffective, given Spolin's failure to raise in *Valenciano II* these developments in the law. Spolin Law filed the opening brief in *Valenciano II* in March 2022—months after Assembly Bill No. 333 had taken effect and half a year after *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*), the first appellate decision discussing a petitioner's youth as a factor in analyzing major participation and reckless indifference. But in bringing this newest petition, Valenciano proffered neither evidence nor argument to support the proposition that his commission of the offense reflected youthful immaturity.

4

In December 2023, the trial court denied the petition for resentencing at the prima facie stage, concluding that it was bound by the prior final determination that Valenciano was a major participant who acted with reckless indifference to human life and was therefore guilty of murder under current law.[5]

## II.     DISCUSSION

"We independently review the denial of a resentencing petition at the prima facie stage, whether the denial is based on the issue preclusion doctrine [citation], the law of the case doctrine [citation], or, more generally, failure by the petitioner to make a prima facie showing under section 1172.6." (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238–1239.)  On appeal, Valenciano argues that intervening changes in the law permit his relitigation of the now-final determination from *Valenciano II* that he was a major robbery participant who acted with reckless indifference to human life: (1) Assembly Bill No. 333 now narrows what qualifies as a predicate offense under the gang statute, limiting the scope of gang evidence admissible at trial under section 186.22, and (2) recent case law now requires considering a defendant's youth in implied malice determinations.[6]  But Assembly Bill No. 333 did not purport to limit the admissibility of gang evidence offered to prove material facts such as motive or knowledge of a coparticipant's capacity for violence, so it does not relieve Valenciano of the preclusive effect of his prior petition's denial.  And based on the bare allegations of his form petition

---

[5] At the prima facie stage, section 1172.6, subdivision (b)(1)(A) requires that Valenciano allege that he is eligible for relief based on all the requirements set forth under subdivision (a), including that he cannot presently be convicted of murder or attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(1)–(3).)

[6] Although this is the second of Valenciano's petitions for resentencing that we have reviewed, the record suggests that Valenciano has filed several other petitions in the past.  Section 1172.6 does not on its face bar successive petitions, and the Attorney General does not argue that a successive petition ostensibly based on new authority is procedurally barred.  (See, e.g., *People v. Farfan* (2021) 71 Cal.App.5th 942, 951.)

5

and arguments in the trial court and on appeal, Valenciano has not demonstrated that it is reasonably likely that the finding of reckless indifference would have been different had he expressly argued in his earlier petition for resentencing the impact of his youth on his mental state.  (See *People v. Curiel* (2023) 15 Cal.5th 433, 457 (*Curiel*).)

## A.     *Issue Preclusion*

### 1.     *General Principles and the Equitable Exception*

" 'In general, whether a prior finding will be given conclusive effect in a later proceeding is governed by the doctrine of issue preclusion, also known as collateral estoppel.' " (*Curiel*, *supra*, 15 Cal.5th at p. 451.)  " '[I]ssue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' " (*Id*. at pp. 451–452.)  " 'The party asserting collateral estoppel bears the burden of establishing these requirements.' " (*Id*. at p. 452.)

Here, all four elements of issue preclusion are met with respect to the findings that Valenciano was a major participant who acted with reckless indifference to human life.  The same issues were litigated and decided in *Valenciano II*, when we considered Valenciano's appeal from the denial of his 2019 petition for resentencing.  Furthermore, the issues were actually litigated and necessarily decided on the merits in *Valenciano II*, and the parties here—Valenciano and the People—are the same as in *Valenciano II*.  (See *Curiel*, *supra*, 15 Cal.5th at pp. 451–452.)

But under a "well-settled equitable exception," "a significant change in the law since the factual findings were rendered" may warrant relief from issue preclusion even when the doctrine would otherwise apply.  (*People v. Strong* (2022) 13 Cal.5th 698, 716

(*Strong*).) " ' "Even if the[] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles" of promoting efficiency while ensuring fairness to the parties.' " (*Curiel*, *supra*, 15 Cal.5th at p. 454.) In *Strong*, the California Supreme Court applied the "well-settled equitable exception" to issue preclusion in a situation "when there has been a significant change in the law since the factual findings were rendered" to a jury's findings that a defendant was a major participant who acted with reckless indifference to human life. (*Strong*, at p. 716.) *Strong* explained that the equitable exception "ensures basic fairness by allowing for relitigation where 'the change in the law [is] such that preclusion would result in a manifestly inequitable administration of the laws.' " (*Id*. at p. 717.)

But not all changes in the law warrant equitable relief from issue preclusion. Unlike in *Strong*, the California Supreme Court in *Curiel* declined to find the equitable exception applicable in the case before it. The *Curiel* defendant challenged the jury's intent to kill finding in a section 1172.6 petition and argued that issue preclusion was inapplicable because the decision in *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) narrowed the permissible scope of expert testimony. (*Curiel*, *supra*, 15 Cal.5th at p. 455.) In rejecting this argument, *Curiel* reasoned that "although *Sanchez* narrowed the scope of permissible expert testimony, it did not impact the ability of an expert to rely on hearsay evidence to reach his or her opinions, relate those opinions to the jury, and explain in general terms their bases." (*Id*. at p. 457.) "Nor did *Sanchez* foreclose the introduction of case-specific evidence through other means." (*Ibid*.) Thus, *Curiel* found the equitable exception inapplicable because the court saw "no reasonable likelihood that the jury's substantive finding in [the] case would have been different if *Sanchez* had been the law during Curiel's trial." (*Ibid*.)

### 2. *Assembly Bill No. 333*

Valenciano argues that the enactment of Assembly Bill No. 333 requires application of the equitable exception to issue preclusion in his case. Effective January 1,

2022, Assembly Bill No. 333 amended section 186.22 and made several changes to the definition of gang enhancements. (*People v. Clark* (2024) 15 Cal.5th 743, 752.) In part, it narrowed the definition of a pattern of criminal activity, now requiring that " 'the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed.' " (*Ibid.*)[7]

Valenciano specifically argues that the following three older crimes, which were used in his 2009 trial to prove the existence of the VGV gang under former section 186.22, are now too remote in time and would no longer be admissible under the law as amended by Assembly Bill No. 333: (1) a May 2000 jump-in involving Gonzales, where he was convicted for his role in a VGV assault of other gang members, (2) a September 2000 assault on a gang rival implicating Soto, though Soto was neither arrested nor convicted of this crime, and (3) a November 2000 attempted armed robbery involving Soto during which Soto held a box cutter. Valenciano argues that the trial court in 2019 and this court in *Valenciano II* used evidence of these crimes, which were committed by his codefendants and other VGV gang members, to determine that he acted with reckless indifference to human life. Valenciano notes that these uncharged offenses were used to support the determination that he knew of his codefendants' propensity for violence. (See *People v. Clark* (2016) 63 Cal.4th 522, 621 ["[a] defendant's knowledge of factors bearing on a cohort's likelihood of killing are significant to the analysis of reckless indifference to human life"].)

But Valenciano does not dispute the jury's findings on the gang enhancements in his case. Rather, Valenciano argues that Assembly Bill No. 333 would have limited the

---

[7] Assembly Bill No. 333's amendments to the definition of section 186.22 gang enhancements are retroactively applicable to cases on direct review. (*Ibid.*; *People v. Tran* (2022) 13 Cal.5th 1169, 1207; *In re Estrada* (1965) 63 Cal.2d 740 [absent contrary indication of legislative intent, ameliorative criminal legislation applies to nonfinal judgments].)

scope of admissible gang evidence at his jury trial, which in turn would have limited the evidence before the trial court on his 2019 resentencing petition and, ultimately, would have altered this court's decision to affirm the denial of that petition on substantial evidence review.  Critically, however, Assembly Bill No. 333 did not "limit[] the introduction of gang evidence . . . where the gang evidence is relevant to the underlying charges."  (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132, disapproved on a different point as stated in *People v. Burgos* (2024) 16 Cal.5th 1, 31.)  And Valenciano's own argument concedes that evidence of his codefendants' acts of violence was relevant evidence of his reckless indifference.  Accordingly, even though the uncharged acts would be too remote in time to *now* prove VGV's "pattern of criminal gang activity" under the current version of section 186.22, the evidence nonetheless remains admissible as relevant evidence of his cohorts' violent tendencies to support the inference that Valenciano was likely to know that the men were prone to using lethal force.  (See *In re Parrish* (2020) 58 Cal.App.5th 539, 544 [defendant "knew his cohorts were not peaceable or cautious" as "[o]ne was a fellow longtime Crips gang member"].)

Thus, Valenciano has shown no reasonable likelihood that the trial court's findings would have been different had it considered the impact of Assembly Bill No. 333 on the evidence.  (See *Curiel*, *supra*, 15 Cal.5th at p. 457 [noting that *Sanchez* did not foreclose admissibility of case-specific evidence through other means].)  Accordingly, the change in law by the enactment of Assembly Bill No. 333 does not support Valenciano's claim that either the major participation or reckless indifference findings from *Valenciano II* should not be given preclusive effect.  (*Ibid.*)

### 3.     *Youthfulness and Murder Liability*

Valenciano next argues for equitable relief from issue preclusion on the ground that the trial court in *Valenciano II* did not consider his youth when determining whether

he was a major participant who acted with reckless indifference to human life.[8]  But like his arguments regarding Assembly Bill No. 333, Valenciano has not demonstrated on this record that the findings in *Valenciano II* would have been different had his youthfulness been considered.  (See *Curiel*, *supra*, 15 Cal.5th at p. 457.)  Accordingly, the changes in the law regarding youthfulness and implied malice do not support his claim that the equitable exception applies.  (*Ibid*.)

### a.    *Recent Developments in the Law*

In *Miller v. Alabama* (2012) 567 U.S. 460, the United States Supreme Court held that mandatory life without parole sentences for juveniles violate the Eighth Amendment because " 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.' " (*Miller*, at pp. 471–472, quoting *Graham v. Florida* (2010) 560 U.S. 48, 68.)  Following *Miller* and *Graham*, the effect of youthfulness on criminal culpability has become a growing concern for the California Legislature, which effective January 1, 2018, has mandated that certain youthful offenders who were younger than 26 years old when they committed their controlling offenses are eligible for youth offender parole hearings if he or she was sentenced to a

---

[8] The Attorney General argues that because Valenciano did not assert or rely on his youth as a factor to consider *Valenciano II*, his arguments about youth are forfeited.  But as explained *post*, while some of the cases involving the consideration of youth may have been considered on or around the time *Valenciano II* was being litigated in the trial court in 2023, the case law on youthfulness continued to develop well into that year.  (See *People v. Pittman* (2023) 96 Cal.App.5th 400, 416 (*Pittman*) [declining to find forfeiture when defendant did not raise issue of his youth in the trial court because relevant appellate cases were not decided until 2021 or later].)  Furthermore, cases like *Curiel*, *supra*, 15 Cal.5th 433, *Strong*, *supra*, 13 Cal.5th 698, and *People v. Jimenez* (2024) 103 Cal.App.5th 994 (*Jimenez*), which discussed principles of issue preclusion and the equitable exception to issue preclusion, were decided *after* the trial court denied Valenciano's petition for resentencing in 2024.  We therefore do not find his arguments about youth and issue preclusion forfeited on this record.

10

determinate term or a term of life with the possibility of parole. (§ 3051, subd. (b); Stats. 2017, ch. 675, § 1.)

Consistent with these principles, appellate courts have recently acknowledged that a defendant's youth, "defined, roughly, as being 25 years of age and younger . . . is a factor within the totality of circumstances relevant to the requisite mental state for felony murder." (*Pittman*, *supra*, 96 Cal.App.5th at p. 416; see also *People v. Harris* (2021) 60 Cal.App.5th 939, 960 [considering defendant's youth in determining whether defendant was major participant, particularly in light of case law recognizing science related to adolescent brain development], review granted Apr. 28, 2021, S267802, review dismissed Sept. 28, 2022; *Moore*, *supra*, 68 Cal.App.5th at p. 454 ["a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life"]; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 [considering youth as a factor in determining whether defendant was guilty of felony murder in petition for resentencing under former § 1170.95]; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1091–1093 [remanding for reconsideration of a defendant's youthfulness as part of the totality of circumstances to determine whether a defendant was a major participant who acted with reckless indifference to human life on resentencing petition]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987 [noting that youthfulness is a relevant factor in determining whether a defendant acted with reckless indifference]; *People v. Oliver* (2023) 90 Cal.App.5th 466, 485–490 (*Oliver*) [discussing consideration of youthfulness as to whether a defendant was a major participant who acted with reckless indifference]; *Pittman*, at pp. 416–418 [remanding for reconsideration of how a defendant's youthfulness impacted ability to form requisite mental state].)

Based on this evolution of the decisional law, one court recently held that collateral estoppel did not bar a defendant's successive section 1172.6 petition because appellate courts had only recently started to require consideration of a young adult offender's age in implied malice murder petitions, which thus warranted a reexamination

11

of whether the defendant there had acted with malice.  (*Jimenez*, *supra*, 103 Cal.App.5th at p. 1005.)

### b.      *Application to Valenciano's Petition*

Unlike the defendant in *Jimenez*, Valenciano has not demonstrated that the equitable exception should apply to his case.  (See *Curiel*, *supra*, 15 Cal.5th at p. 457.)

Equitable relief from issue preclusion turns not just on a change in the law but on a defendant's particular circumstances:  We must examine whether the change in the law is reasonably likely to have altered the trier of fact's prior findings.  (See *Curiel*, *supra*, 15 Cal.5th at p. 457.)  The equitable exception applies when issue preclusion " 'would result in a *manifestly inequitable* administration of the laws' "; to determine whether such manifest inequity may arise and whether an issue "warrants reexamination," we must examine the facts of Valenciano's case.  (*Strong*, *supra*, 13 Cal.5th at p. 717, italics added; *id*. at p. 716.)[9]

On appeal, Valenciano relies solely on the bare assertion that his age—24 years at the time of the offense—mitigates culpability.  We do not suggest that a defendant invoking the equitable exception to issue preclusion invariably bears a burden to produce

---

[9] We do not read *Jimenez* as holding that the equitable exception necessarily precludes the application of collateral estoppel in all cases where a fact finder did not expressly consider an offender's youth.  Upon stating that "principles of fairness require . . . a new evidentiary hearing . . . under current case law," the *Jimenez* court next proceeded to a prejudice analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*Jimenez*, *supra*, 103 Cal.App.5th at pp. 1006, 1007.)  We understand those principles of fairness to inhere in *Curiel*'s guidance that the equitable exception will not apply in the first instance absent a reasonable likelihood that the change in law would have affected the prior findings, as in *Watson*'s prejudice inquiry.  (Compare *Curiel*, *supra*, 15 Cal.5th at p. 457 with *Watson*, at p. 836 [error is prejudicial if it is reasonably probable that a result more favorable to the defendant would have been reached absent the putative error].)  Accordingly, for the same reasons we will find that Valenciano has not shown preclusion would result in a manifestly inequitable administration of the laws, we would likewise find a lack of *Watson* prejudice on this record from any omission of youthfulness in the trier of fact's analysis.

evidence beyond that adduced in the prior litigation of the identical issue; we hold only that the case-specific application of the exception requires a more than a conclusory assertion of manifest inequity based on age. And in *Valenciano II*, the evidence before the trial court did not suggest youthful impulsivity in Valenciano's planning of the robbery or his choice of coparticipants. To the contrary, the trial evidence suggested the opposite. Beyond evidence that all three men were VGV gang members, the trial evidence suggested that Valenciano—far from lacking mature criminal experience or sophistication—was sufficiently involved in gang operations to have once dispensed gang funds to friends and family of VGV members in custody and to procure the assistance of other gang members to effect their escape. And it was Valenciano who supplied the VGV guns used in the fatal robbery and who instigated the robbery to pay his Nuestra Familia tax.

Nor is there any evidence that Valenciano felt compelled by his codefendants to participate in the crime or that he did so to ingratiate himself with these peers. Indeed, Valenciano himself was the oldest of the three codefendants. At the time of Escobar's murder, Soto was 21 years old and Gonzales was 23 years old. The ages of Valenciano's codefendants—all in their 20's—did not suggest " 'transient rashness' " sparked by the "happenstance" of noticing the victim " 'shooting up dope with a prostitute' " by Pittman's home and the "spontaneous" selection of weapons contributed to the plan to commit armed robbery. (Cf. *Pittman*, *supra*, 96 Cal.App.5th at p. 418.)

There was also evidence that Valenciano was an active participant in the underlying offense. He monitored the police scanner while Soto and Gonzales approached the victims and later drove his codefendants away from the scene, assisting in the disposal of the scanner. When later describing what happened to V.M., the mother of his child, Gonzales blamed Valenciano for what happened. And unlike in *Jimenez*, where there was only limited circumstantial evidence that the defendant knew of the actual killer's intent (*Jimenez*, *supra*, 103 Cal.App.5th at p. 1008), there was circumstantial

13

evidence—as we discussed in *Valenciano II*—that Valenciano knew of Gonzales's propensity for violence: The two were close, longtime friends; both were members of what was reputed to be one of the area's most violent gangs; and VGV's violence was not reserved for members of rival gangs. Indeed, there was evidence that V.M. was sufficiently afraid of VGV that she cautioned Soto's girlfriend to make a false report to the police, warning her that VGV and Nuestra Familia enforcers might otherwise harm them. There was also evidence that a gang leader slashed Valenciano's father in the head for failing to supply bail money.

*Jimenez* rejected the argument that collateral estoppel barred the defendant's second petition for resentencing and found prejudicial error in failing to consider youthfulness. But the facts of *Jimenez* are distinguishable. There, the defendant was only 19 years old at the time of the offense, the actual shooter—the defendant's girlfriend—was only 20 years old, and there was evidence that supported an inference that the defendant was influenced by peer pressure, as he had known the shooter for less than a month, had only recently begun dating her, and "could have been particularly susceptible to the influence of a new girlfriend." (*Jimenez*, *supra*, 103 Cal.App.5th at p. 1007; *id*. at p. 1000.) There was also no evidence to suggest that the defendant knew or had reason to know she had a propensity for violence, or that he had any involvement in her "personal animus" toward the victim. (*Id.* at p. 1008.) Thus, we understand the closeness of the original implied malice determination in *Jimenez* to have warranted an inference that youthful impulsivity could materially alter a fact finder's assessment of the totality of the circumstances.

*Pittman* likewise held that a failure to consider the defendant's youth at the evidentiary hearing stage of a section 1172.6 proceeding was not harmless because Pittman, then 21 years old, participated in the attack with peers who were 16 and 17 years old, and the age of all three participants permitted "[i]nferences of immaturity and peer pressure" to be drawn. (*Pittman*, *supra*, 96 Cal.App.5th at p. 418.) The trial evidence in

14

*Pittman* further suggested that Pittman and his codefendants "acted impulsively and under the influence of 'transient rashness,' " including what appeared to have been Pittman's spontaneous selection of available chisels as weapons. (*Ibid.*) Pittman and his codefendants did not plan the attack in advance—the group had attended the party, were drunk, when they saw a man " 'shooting up dope with a prostitute in his truck.' " (*Id*. at p. 404.) Indeed, the group's "acknowledged motivation for the crime was [this] happenstance." (*Id*. at p. 418.)

But in contrast to *Pittman*, *Oliver* concluded that a failure to consider a defendant's youthfulness was harmless after the trial court denied a resentencing petition following an evidentiary hearing. (*Oliver*, *supra*, 90 Cal.App.5th at pp. 477, 488–490.) *Oliver* observed that "the case law discussing the differences in brain development among youthful offenders (in contrast to their adult counterparts) stress two areas of divergence: (1) their relative impulsivity; and (2) their vulnerability to peer pressure." (*Id*. at p. 489.) Yet none of these factors were present in *Oliver*. The evidence disclosed that the defendant was fully aware of his codefendant's intent to kill and remained an active participant. (*Ibid*.) Furthermore, there was no evidence of peer pressure, as the defendant and his codefendant had been engaging in drug transactions as partners for a number of years. (*Ibid*.) And the defendant simply failed to present either in the trial court or on appeal "*any* specific support for the proposition that his level of maturity somehow lessened his culpability for th[e] murder." (*Id*. at p. 490.)[10]

---

[10] *Jimenez*, *supra*, 103 Cal.App.5th 994 is thus far the only published case to address the consideration of youthfulness in the context of collateral estoppel in a subsequent petition for resentencing. *Pittman* and *Oliver* were appeals from the trial court's denial of the respective defendants' first (and only) petitions for resentencing, and both cases discussed whether trial courts should have considered youthfulness at evidentiary hearings under section 1172.6 and whether a failure to consider youthfulness was harmless. (*Pittman*, *supra*, 96 Cal.App.5th at p. 403; *Oliver*, *supra*, 90 Cal.App.5th at p. 470.) Collateral estoppel was thus not implicated by either *Pittman* or *Oliver*. But as applied here, we find the discussion of harmlessness in all three cases relevant to our

Factually, Valenciano's case is closer to *Oliver* than it is to either *Jimenez* or *Pittman*. Unlike the defendant in *Jimenez*, Valenciano is higher on the age spectrum for youthful offenders. (*Oliver*, *supra*, 90 Cal.App.5th at p. 489 ["the presumption of immaturity weakens as a defendant approaches 26"].) And unlike the defendant in *Pittman*—where the juvenile coparticipants, despite their youth, had been involved in a recent murder—there is no evidence to suggest that Valenciano lacked his codefendants' criminal experience, sophistication, or initiative. (*Pittman*, *supra*, 96 Cal.App.5th at p. 410.)

In his reply brief, Valenciano argues that it is "unreasonable" to fault him for failing to present evidence of how his youthfulness impacted his mental state when he had no incentive or opportunity to do so at an evidentiary hearing. We recognize that no evidentiary hearing was held on Valenciano's 2023 petition, as the petition was denied at the prima facie stage. But here, the prosecutor aptly pointed to prior findings made in *Valenciano II* that conclusively negated the allegations in Valenciano's 2023 petition, including this court's affirmance of the trial court's denial. (See *Curiel*, *supra*, 15 Cal.5th at p. 449.) And to succeed in his argument that the equitable exception to issue preclusion should apply, Valenciano had to demonstrate *how* "the change in the law" that he argues applies to him—in this case, the development of case law on youthfulness— "would . . . have changed the outcome of [his] trial on that issue" thereby amounting to a "change 'that warrants reexamination.' " (*Id*. at p. 458 [characterizing it as Curiel's burden to show that that the jury would have reached a different conclusion had *Sanchez* been in effect at the time of his trial].) Thus, it was for Valenciano to demonstrate on this second petition that equitable circumstances precluded the application of collateral

---

analysis of whether the change in law warrants reexamination of the trial court's prior findings.

estoppel once all the requirements of the doctrine had been met, entitling him to a second evidentiary hearing.  (*Ibid*.)

Valenciano has not done so.  And based on the foregoing, the change in the law regarding youthfulness does not support his claim that the court's prior findings on his mental state should be reexamined and that the findings should not be given preclusive effect.  (See *Curiel*, *supra*, 15 Cal.5th at p. 457.)[11]  Because the application of issue preclusion at the prima facie stage is thus neither unfair nor arbitrary, we also reject Valenciano's further argument that the trial court denied him due process of law in not affording him a second evidentiary hearing.  (Cf. *Rivera v. Illinois* (2009) 556 U.S. 148, 158 [observing that "[t]he Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial' "].)

## B.    *Ineffective Assistance in* **Valenciano II**

Valenciano also argues that he was deprived of the effective assistance of counsel because his counsel in *Valenciano II* failed to raise his youth or the impact of Assembly Bill No. 333 when litigating his 2019 petition for resentencing.  He argues that the evidentiary hearing in *Valenciano II* was held in 2021, after several appellate decisions had held that a defendant's youth should be considered in implied malice determinations and after the effective date of Assembly Bill No. 333.  He notes as well that his counsel in *Valenciano II* has stipulated to disbarment from the state bar, albeit for reasons unrelated to his case or to constitutionally ineffective assistance in other cases.

---

[11] Because issue preclusion applies to bar relitigation of the trial court's determination that Valenciano was a major participant who acted with reckless indifference to human life, we need not address the People's alternative contention that the trial court correctly applied the law of the case doctrine.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 786 [when a reviewing court " ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress" ' "].)

We are troubled by issues Valenciano raises as to his former counsel's performance in the trial court and on appeal in *Valenciano II*. But on this limited record and in this procedural posture, we have no basis to act on the concerns Valenciano has raised. The constitutional adequacy of Valenciano's representation in litigating his 2019 petition for resentencing is not properly before us on direct review of the trial court's denial of Valenciano's 2023 petition. Generally, an appealable order that has become final and binding cannot be subsequently attacked on appeal from a later appealable order or judgment. (See *In re J.F.* (2019) 39 Cal.App.5th 70, 75 [jurisdiction on appeal is limited to the judgment or order appealed from]; see also *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421; *People v. Pinedo* (2005) 128 Cal.App.4th 968, 972; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [observing that where the record lacks facts necessary to a determination of an issue, a claim of ineffective assistance of counsel "is more appropriately decided in a habeas corpus proceeding"].) As Valenciano's claims of ineffective assistance of counsel are based on Spolin Law's litigation of his 2019 resentencing petition, we lack jurisdiction to consider these arguments in this appeal from the denial of a later petition.

## III.   DISPOSITION

The order denying Valenciano's petition for resentencing is affirmed.

18

_____

              LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

RODRIGUEZ, J.*

*People v. Valenciano*
H051645

---

*Judge of the San Diego County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.